MICHAEL VON LOEWENFELDT (178665)
IVO LABAR (203492)
DANIEL J. VEROFF (291492)
**KERR & WAGSTAFFE LLP**
101 Mission Street, 18th Floor
San Francisco, CA 94105–1727
Telephone: (415) 371-8500
Fax: (415) 371-0500
Email: mvl@kerrwagstaffe.com
Email: labar@kerrwagstaffe.com
Email: veroff@kerrwagstaffe.com

Attorneys for Plaintiff
G. GRANT JOHNSON

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| G. GRANT JOHNSON, an individual, on behalf of himself and a class of similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> HARTFORD CASUALTY INSURANCE COMPANY, an Indiana corporation; and DOES 1-25, <br><br> Defendants. | Case No. 3:15-cv-04138-WHO <br><br> **NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> DATE: April 5, 2017 <br> TIME: 2:00 PM <br> DEPT: Courtroom 2, 17th Floor <br><br> TRIAL: [None] |

# TABLE OF CONTENTS

*Page*

NOTICE OF MOTION AND MOTION ............................................................................... 1

I.    INTRODUCTION ............................................................................................................ 2

II.   BACKGROUND ............................................................................................................. 4

    A.    Insurance Code section 2051 And Its Accompanying Regulations Control
        The Calculation Of Actual Cash Value For A Partial Loss ................................. 4

        1.    Actual Cash Value must be full replacement cost reduced *only* by
            *physical* depreciation based on condition ................................................... 5

        2.    Structural components that are not ordinarily repaired and replaced
            *may not be depreciated* in calculating Actual Cash Value ....................... 5

        3.    An insurance company must full document the reasons for any
            depreciation taken ................................................................................... 6

    B.    Hartford's California Replacement Cost Policies Require An Initial
        Obligation To Pay Actual Cash Value That Purports To Comply With
        Section 2051 ...................................................................................................... 7

    C.    Hartford's Admitted Practices Violate Its Insurance Policy And California
        Law .................................................................................................................... 8

        1.    Hartford believes that whether a component is "normally subject to
            repair and replacement" depends on its unique circumstances ................ 9

        2.    Hartford fails to pay proper Actual Cash Value by calculating sales
            tax after depreciation ............................................................................ 10

        3.    Hartford fails to fully explain to insureds in writing the basis for
            depreciation as required by Regulation 2695.9(f) ................................. 11

    D.    Hartford Applied Each of The Challenged Policies To Mr. Johnson's
        Claim ................................................................................................................ 12

    E.    Certification Sought From This Court ............................................................. 13

III.  ARGUMENT ................................................................................................................ 13

    A.    Applicable Legal Standards ............................................................................. 13

    B.    The Requirements of Rule 23(a) Are Met ...................................................... 14

        1.    Numerosity is satisfied and the classes are sufficiently
            ascertainable .......................................................................................... 14

        2.    Commonality is satisfied ........................................................................ 15

3.   Plaintiff's claim is typical of the proposed classes ................................16

4.   Plaintiff and his counsel are adequate ...............................................17

     a)   Plaintiffs' Counsel is Adequate. ..............................................17

     b)   Plaintiff is an adequate representative ...................................18

C.   The Requirements of Rule 23(b)(3) Are Met ...................................... 18

     1.   Common issues of fact and law predominate .............................18

          a)   Breach of contract ...............................................................19

          b)   Bad faith.................................................................................20

          c)   Declaratory Relief and 17200 ..........................................20

     2.   Class treatment is the superior method of resolving this dispute...........21

IV.   CONCLUSION...............................................................................................21

KERR
&
WAGSTAFFE
LLP

*Pages*

### *Cases*

*Alexander v. Farmers Ins. Co.,*
219 Cal. App. 4th 1183 (2013) ................................................................................. 18

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................................................................. 18

*Arnott v. U.S. Citizenship & Immigration Servs.,*
290 F.R.D. 579 (C.D. Cal. 2012) ............................................................................. 14

*Briseno v. ConAgra Foods, Inc.,*
2017 WL 24618 (9th Cir. Jan. 3, 2017) ................................................................... 15

*Brown v. Hain Celestial Grp., Inc.,*
2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ................................................... 16, 17

*Cohen v. Trump,*
303 F.R.D. 376 (S.D. Cal. 2014) ............................................................................. 15

*Del. Racing Ass'n v. McMahon,*
340 A. 2d 837 (Del. 1975) ......................................................................................... 5

*Dickler v. CIGNA Prop. & Cas. Co.,*
957 F.2d 1088 (3d Cir. 1992) ..................................................................................... 5

*Doan v. State Farm Gen. Ins. Co.,*
195 Cal. App. 4th 1082 (2011) ................................................................................... 4

*Erica P. John Fund, Inc. v. Halliburton Co.,*
563 U.S. 804 (2011) ................................................................................................. 19

*Fire Ins. Exch. v. Super. Ct.,*
116 Cal. App. 4th 446 (2004) ..................................................................................... 4

*Gen. Tel. Co. of the Sw. v. Falcon,*
457 U.S. 147 (1982) ........................................................................................... 16, 18

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir.1998) ................................................................................... 17

*Hanon v. Dataproducts,*
976 F.2d 497 (9th Cir. 1992) ................................................................................... 14

*Hopkins v. Stryker Sales,*
2012 WL 1715091 (N.D. Cal. May 14, 2012) ......................................................... 13

*In re Cooper Cos. Inc. Sec. Litig.,*
254 F.R.D. 628 (C.D. Cal. 2009) ............................................................................. 14

*In re HiEnergy Techs., Inc. Sec. Litig.,*
2006 WL 2780058 (C.D. Cal. Sept. 26, 2006) ......................................................... 14

iii

KERR
—&—
WAGSTAFFE
LLP

*In re Intermec Corp. Sec. Litig.,*
    Fed. Sec. L. Rep. (CCH) 96 (W.D. Wash. 1991) ................................................ 14

*Kirkwood v. Cal. State Auto. Ass'n Inter-Ins. Bureau,*
    193 Cal. App. 4th 49 (2011) ...................................................................... 4, 18

*Lilly v. Jamba Juice Co.,*
    308 F.R.D. 231 (N.D. Cal. 2014) ............................................................. 15, 21

*Maslo v. Ameriprise Auto & Home Ins.,*
    227 Cal. App. 4th 626 (2014) ......................................................................... 20

*Mills v. Foremost Ins. Co.,*
    511 F.3d 1300 (11th Cir. 2008) ..................................................................... 10

*Mortimer v. Baca,*
    2005 WL 1457743 (C.D. Cal. May 25, 2005) ............................................... 19

*Oasis W. Realty, LLC v. Goldman,*
    51 Cal. 4th 811 (2011) .................................................................................... 19

*Patel v. Trans Union, LLC,*
    308 F.R.D. 292 (N.D. Cal. 2015) ................................................................. 14

*Rai v. Santa Clara Valley Transp. Auth.,*
    308 F.R.D. 245 (N.D. Cal. 2015) ........................................................... 14, 19

*Rodriguez v. Hayes,*
    591 F.3d 1105 (9th Cir. 2009) ...................................................................... 15

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ........................................................................ 18

*Schwartz v. Harp,*
    108 F.R.D. 279 (C.D. Cal. 1985) .................................................................. 14

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC,*
    445 F. Supp. 2d 320 (S.D.N.Y. 2006) ............................................................ 5

*Stearns v. Ticketmaster Corp.,*
    655 F.3d 1013 (9th Cir. 2011) ...................................................................... 20

*Vietnam Veterans of Am. v. C.I.A.,*
    288 F.R.D. 192 (N.D. Cal. 2012) ................................................................. 15

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ....................................................................................... 15

*Weinberger v. Thornton,*
    114 F.R.D. 599 (S.D. Cal. 1986) .................................................................. 14

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001), ............................................................... 14, 21

### *Statutes*

Ins. Code § 2051 ............................................................................................... 2, 5, 8, 10

Ins. Code § 2070 ............................................................................................... 4

Ins. Code § 2071 ............................................................................................... 4

### *Rules*

Fed. R. Civ. P. 23 .............................................................................................. passim

### *Regulations*

Cal. Code Regs. tit. 10, § 2695.3 ...................................................................... 15

Cal. Code Regs. tit. 10, § 2695.9 ...................................................................... 2, 7, 8

KERR
&
WAGSTAFFE
LLP

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 5, 2017, at 2:00 PM, or as soon thereafter as the matter may be heard, in Courtroom 2, 17th Floor of the United States District Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiff G. Grant Johnson, on his own and on behalf of the putative classes (as defined below), will and hereby do move this Court for an Order: (1) granting class certification in the above-captioned action ("Action") against Defendant Hartford Casualty Insurance Company ("Hartford"), pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (2) appointing Plaintiff as Class Representative; and (3) appointing Plaintiffs' Counsel as Class Counsel.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declaration of Daniel J. Veroff and exhibits thereto, the accompanying Declaration of Michael von Loewenfeldt, the accompanying declaration of Plaintiff, the accompanying Request for Judicial Notice, the papers and records on file in this Action, and such other written and oral arguments as may be presented at or before the hearing to the Court.

Dated: January 20, 2017     **KERR & WAGSTAFFE LLP**

By:   /s/ Michael von Loewenfeldt
MICHAEL VON LOEWENFELDT

Attorney for Plaintiff
G. GRANT JOHNSON

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Hartford uniformly underpays property insurance claims in California by applying an unlawful method of calculating the Actual Cash Value (an extremely common policy benefit) of damaged property in partial building losses (where some of the structure remains).  Because Hartford applies these unlawful methods to every California claim, class certification is proper.

California strictly proscribes the method by which Hartford can calculate Actual Cash Value.  *First*, Hartford must determine the cost to repair or replace the component ("Replacement Cost Value"), which includes sales tax.  *Second*, for components that are normally repaired and replaced during the structure's useful life, Hartford may reduce the Replacement Cost Value by a fair and reasonable deduction for the physical depreciation (i.e. wear and tear).  Ins. Code § 2051(b).  Structural components which are not normally repaired and replaced during the useful life of a structure (i.e. two-by-four studs, cement posts, framing) cannot be depreciated, and thus, the Actual Cash Value of these components must be the same as the Replacement Cost Value.  *Id.*  Finally, to ensure compliance with these rules, California requires insurers to fully explain all depreciation taken to insureds in writing.  Cal. Code Regs. tit. 10, § 2695.9(f).

Hartford's uniform practices violate all of these requirements.

*First*, Hartford treats every structural component as potentially subject to depreciation.  It asserts that the law does not require it to treat any components as not normally subject to repair and replacement, but that instead it must make the determination on a claim-by-claim basis.  This approach cannot be squared with the term "normally" in the statute, which requires a categorical, not a claim-by-claim analysis.  It also defeats the statutory goal of preventing insurance companies from depreciating components that are typically expected to the last as long as any structure, like the framing.

*Second*, when Hartford depreciates the Replacement Cost Value of components, it depreciates sales tax as well.  This is unlawful.  The statute precludes any non-physical depreciation, and sales tax is an intangible.  In a bit of semantics, Hartford argues that it is not

KERR
&
WAGSTAFFE
LLP

"depreciating" sales tax but instead "applying" the tax rate to the Actual Cash Value (i.e., after taking depreciation from the pre-tax Replacement Cost Value). But this too violates the law, because sales tax is part of Replacement Cost Value, which can only be reduced for *physical* depreciation.

*Third*, Hartford fails to document, in writing, all justification for depreciation taken, even internally. No written explanation is provided to the insured as required by law. Instead, Hartford merely provides insureds with an estimate that lists the amount of depreciation taken per component without explanation, and then leaves it to the insured to surmise what this means.

Hartford underpays California claimants like Plaintiff using all of these unlawful practices. And because Hartford admits its practices are uniform and only disagrees with Plaintiff's interpretation of the law, this case is properly subject to class treatment under Federal Rule of Civil Procedure 23(a) and (b). Accordingly, Plaintiff seeks certification of a class and one sub-class as follows:

**Proposed Class:** All California residents insured under a policy issued by Hartford Casualty Insurance Company, Inc. who suffered a partial loss to a covered structure between August 13, 2011 and the present day who were not paid either (a) the limits of the policy's coverage for structural loss or (b) full replacement cost for the structural loss without deduction for depreciation.

**Proposed Non-Depreciable Component Sub-Class:** All members of the Proposed Class whose Actual Cash Value payment was reduced by depreciation to one or more of the following structural components and who did not fully recover all depreciation in a subsequent claim for replacement cost value: acoustical ceilings, baseboards, basement floor systems, bath cabinets, brick, ceilings and ceiling suspension, ceramic tile, cement, cement posts, chimneys, closet doors, closet shelves, concrete footings, concrete foundations, custom millwork, drywall, electrical wiring and insulation, engineered wood, exterior siding, fiber cement, fiberglass doors, fireplaces, floor trusses, framing, insulation, laminated strand lumber, lath, mantles, marble, natural stone, natural wood flooring, ornamental iron, plaster, plumbing, poured concrete structural systems, roof trusses, rough carpentry, rough structure, slate flagstone floors, stairs,

stone, stucco, terrazzo, timber frames, toilets, trim, two-by-four studs, walls, wall panels, wood doors, and wood shutters.

## II.    BACKGROUND

### A.    INSURANCE CODE SECTION 2051 AND ITS ACCOMPANYING REGULATIONS CONTROL THE CALCULATION OF ACTUAL CASH VALUE FOR A PARTIAL LOSS

In California, the Insurance Code sets the terms of standard form fire insurance policies. *Kirkwood v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, 193 Cal. App. 4th 49, 53 (2011). "One objective of the standard form is to promote 'better understanding of policy provisions among insurers and insureds and more uniform interpretation by the judiciary.'" *Doan v. State Farm Gen. Ins. Co.*, 195 Cal. App. 4th 1082, 1092 (2011), quoting *Fire Ins. Exch. v. Super. Ct.*, 116 Cal. App. 4th 446, 461 (2004). Thus, insurers must follow the standard form policy. *Doan*, 195 Cal. App. 4th at 1092; Ins. Code §§ 2070, 2071.

The standard form policy provides coverage for structures and their components, "to the extent of the actual cash value of the property at the time of the loss." Ins. Code § 2071. Insurance Code section 2051 establishes the *only* permissible method for determining Actual Cash Value in California.[1] *Kirkwood*, 193 Cal. App. 4th at 54. Insurance Code section 2051 reads, in pertinent part:

> (b) Under an open policy that requires payment of actual cash value, **the measure of the actual cash value recovery**, in whole or partial settlement of the claim, **shall be** determined as follows:
>
> . . .
>
>> (2) In case of a partial loss to the structure, or loss to its contents, the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured **less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury** or the policy limit, whichever is less. In case of a partial loss to the structure, a deduction for physical depreciation shall apply **only to components of a structure that are normally subject to repair and replacement during the useful life of that structure**.

---

[1]    Insurance Code section 2051 was amended by Assembly Bill 2962 ("AB 2962"), as part of the Homeowner's Bill of Rights, which became effective January 1, 2005.

Ins. Code § 2051 (b)(2) (emphasis added).

1. **Actual Cash Value must be full replacement cost reduced *only* by *physical* depreciation based on condition**

As provided by Insurance Code section 2051(b)(2), the "Actual Cash Value" owed by an insurer is "the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured ["Replacement Cost Value"] less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury or the policy limit, whichever is less." Ins. Code § 2051(b)(2). The only permissible deduction from Replacement Cost Value (where such a deduction is allowed at all, as discussed below) is for "physical depreciation" based on the condition of the property at the time of the loss.[2] As such, the corollary is true that non-physical depreciation of the Replacement Cost Value cannot be taken. And because "physical depreciation" refers only to wear and tear, the depreciation of sales tax – a financial deduction – is inappropriate.

2. **Structural components that are not ordinarily repaired and replaced *may not be depreciated* in calculating Actual Cash Value**

The second sentence of Insurance Code section 2051(b)(2) limits which parts of a structure may be depreciated. ***No depreciation*** can be taken for structural components that are not normally repaired and replaced during the life of the structure. "[A] deduction for physical depreciation shall apply only to components of a structure that are normally subject to repair and replacement during the useful life of that structure." Ins. Code § 2051(b)(2). Thus, for parts of a

---

[2] A deduction is only allowed for "physical depreciation" based on the condition of the property at the time of the loss. Physical depreciation is one of three types of depreciation recognized by accepted accounting principles. *Del. Racing Ass'n v. McMahon*, 340 A. 2d 837, 843 (Del. 1975). Physical depreciation refers to the physical wearing-out of property; it is a measure of actual wear and tear. Physical depreciation does not include the separate concepts of functional obsolescence (loss of value due to a change in style or design) or economic obsolescence (loss of value due to external conditions). Nor does "physical depreciation" refer to spreading the cost of an object over its useful life for accounting or tax purposes. Physical depreciation is thus fundamentally different than tax depreciation or obsolescence. See *Dickler v. CIGNA Prop. & Cas. Co.*, 957 F.2d 1088, 1098-99 (3d Cir. 1992); *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC*, 445 F. Supp. 2d 320, 351-53 (S.D.N.Y. 2006); cf. 72 Am. Jur. 2d State and Local Taxation § 662 (Depreciation and Obsolescence).

KERR
&
WAGSTAFFE
LLP

structure not normally repaired and replaced during the structure's lifetime, Actual Cash Value must equal Replacement Cost Value.

The statute creates a clear dichotomy: parts of a building that ordinarily get repaired and replaced, like a roof, *can* be depreciated in the case of partial loss. That makes sense, because a roof wears out (which is why it *normally* needs to be repaired and replaced). Other parts, such as framing inside the walls, are not *normally* repaired and replaced – they *normally* last as long as the building. Accordingly, an insurer *cannot* take depreciation when paying for loss of those components. This is a fair, logical, and sensible rule which Hartford ignores.

This interpretation of section 2051 is well supported by the statute's legislative history. Section 2051 was part of a legislative package (AB 2962) known as the "Homeowners Bill of Rights," which was enacted following the loss of more than 3,500 homes in the 2003 wildfires in Southern California, and the many valuation disputes that arose thereafter between homeowners and insurers. (Request for Judicial Notice ("RJN"), Ex. 10, at 33, 101-104, 133, 142.) The purpose of the bill was to resolve the longstanding ambiguity regarding the determination of Actual Cash Value in the standard form fire policy. (RJN Ex. 10, at 25.) According to the legislative history underlying the amendment, the general purpose of AB 2962 was to provide "consistency" in the claims adjustment process by providing a uniform method of determining Actual Cash Value. (RJN Ex. 10, at 140.) In describing the change in law during its passage, the California Insurance Commissioner repeatedly explained that "AB 2962 . . . ensure[s] that Insurers do not depreciate items that, by their nature do not depreciate (wear out) during the normal life of a structure. Such items might include two-by-four studs, drywall, cement posts, and other components that do not usually wear out." (RJN Ex. 10, at 112-13.)

### 3. An insurance company must full document the reasons for any depreciation taken

In addition to limiting the type of depreciation that can be taken, and prohibiting any depreciation for parts of the structure that are not normally repaired or replaced, California law requires an insurer to document all justification for any depreciation taken and provide the insured with a full, written explanation. Title 10 of the California Code of Regulations section

2695.9 provides, in subsection (f), that

> When the amount claimed is adjusted because of . . . depreciation, . . . **all justification for the adjustment shall be contained in the claim file**. Any adjustments shall be discernable, measurable, itemized, and specified as to dollar amount, and shall accurately reflect the value of the . . . depreciation . . . . Any adjustments for . . . depreciation shall reflect a measurable difference in market value attributable to the condition and age of the property and apply only to property normally subject to repair and replacement during the useful life of the property. **The basis for any adjustment shall be fully explained to the claimant in writing**.

Cal. Code Regs. tit. 10, § 2695.9(f) (emphasis added). An insurance company thus cannot simply assert that a given amount of depreciation is proper; it is required to explain all depreciation to the insured fully and in writing based on discernible, measurable, and specific reasons.

### B. HARTFORD'S CALIFORNIA REPLACEMENT COST POLICIES REQUIRE AN INITIAL OBLIGATION TO PAY ACTUAL CASH VALUE THAT PURPORTS TO COMPLY WITH SECTION 2051

Hartford's standard fire insurance policy sold in California is subject to a California Changes Endorsement (Form SS 01 21 07 08). (Declaration of Daniel J. Veroff ("Veroff Decl."), ¶ 2, Ex. 1 at 171:1-19.) As modified by the California Changes Endorsement, Hartford's policy requires it first to pay for physical loss or damage to covered property on an Actual Cash Value basis, and then to pay the difference between Actual Cash Value and Replacement Cost Value if the repair or replacement is completed within a specified period:

> We will not pay on a replacement cost basis for any loss or damage until the lost or damaged property is actually repaired or replaced, and then only subject to deduction for depreciation. **Prior to such repair or replacement**, and in accordance with the terms applicable Loss Payment conditions in this policy, **we will pay the Actual Cash Value of the lost or damaged property as described in this endorsement.** If the Actual Cash Value does not exhaust the applicable Limit of Insurance, we will then pay the difference between the Actual Cash Value and the replacement cost, provided that the repair or replacement is completed [within specified time periods].

(Veroff Decl., ¶ 3, Ex. 2 at PLTF-JOHNSON004029 (emphasis added).) Hartford's insurance policies in California thus impose a clear contractual obligation to pay Actual Cash Value irrespective of whether the insured repairs or replaces anything.

KERR
&
WAGSTAFFE
LLP

The California Changes Endorsement also expressly defines how Actual Cash Value is calculated for a partial loss of a building or structure in a manner that appears designed to track Insurance Code section 2051:

> Actual Cash Value is determined as follows:
>
> . . .
>
> > b. In the event of a partial loss to a building or structure, Actual Cash Value is calculated as shown below, whichever is less:
> >
> > (1) The amount it would cost to repair, rebuild or replace the property less a fair and reasonable deduction for physical depreciation **of the components of the building or structure that are normally subject to repair or replacement during its useful life**. Physical depreciation is based upon the condition of the property at the time of the loss;
> >
> > (2) The limit of Insurance applicable to the property.

(*Id*. (emphasis added).) [3]

Despite its own insurance policy purporting to apply physical depreciation only to "the components of the building or structure that are normally subject to repair or replacement during its useful life," and Insurance Code section 2051 expressly limiting permitted depreciation to such components, Hartford's admitted uniform practice in California is to allow adjusters to apply depreciation to all components of a structure, to depreciate sales tax, and not to provide insureds with a full, written explanation of depreciation taken.

C. **HARTFORD'S ADMITTED PRACTICES VIOLATE ITS INSURANCE POLICY AND CALIFORNIA LAW**

Although the relevant provisions of Insurance Code section 2051 and the accompanying regulation have existed since 2005, Hartford does not comply with them in at least three ways.

*First*, Hartford asserts that whether a component is "normally subject to repair and

---

[3] To the extent some Hartford policies may differ in precise language, Hartford agrees that they are all nonetheless subject to the requirements of Insurance Code section 2051 and California Code of Regulations section 2695.9(f). (Veroff Decl., ¶ 2, Ex. 1 at 171:1-19.)

replacement" requires a claim-by-claim evaluation, rather than a categorical approach, and thus, that every type of component is potentially "normally repaired and replaced" depending on its "unique" circumstances.

*Second*, Hartford depreciates sales tax when calculating Actual Cash Value, or alternatively, applies sales tax at the Actual Cash Value instead of the Replacement Cost Value step of the equation.

*Third*, Hartford fails to fully explain the depreciation it takes in writing to the insured.

Discovery demonstrates that each of these is a practice followed generally at Hartford in adjusting property claims in California.

### 1.    Hartford believes that whether a component is "normally subject to repair and replacement" depends on its unique circumstances

Hartford adopts an absurd interpretation of Section 2051 and its policy.  It claims that whether a structural component is "normally subject to repair and replacement" must be examined individually for each component in each individual building instead of categorically. (Veroff Decl., ¶ 4, Ex. 3 at 39:23-43:7; ¶ 2, Ex. 1 at 101:6-15, 102:16-104:1, 108:14-109:5.)  As Hartford's 30(b)(6) testified,

> **Q:** So are there any structural components that Hartford does not apply recoverable depreciation to in every case?
>
> **A:** There are not.
>
> . . .
>
> **Q:** So is it Hartford's position that there's no way to determine whether a structural component is generally not normally subject to repair or replacement?
>
> **A:** Again, we take every building on a case by case basis, and look at all -- look at the structural components within that particular building.

(Veroff Decl., ¶ 4, Ex. 3 at 40:21-42:11.)

Hartford's interpretation cannot be squared with the language of the statute or the policy. "Normally" means "in a normal or regular way," "according to rule, general custom, etc.; as a rule, ordinarily, usually."  Random House Dictionary (2013).  All of those concepts relate to

characteristics of a group of things, not unique characteristics of individual things. That is why the California Insurance Commissioner described the purpose of this statute as prohibiting the depreciation of "items [such as] . . . two-by-four studs, drywall, cement posts, and other components that do not usually wear out." (RJN, Ex. 10, at 112-13.)[4] The question of whether the interior framing studs inside the walls of a single family residential dwelling are *normally* repaired or replaced during the lifetime of the structure can only be answered by comparison to what *usually* happens in such structures as a class. One cannot logically discuss whether the interior studs of a specific house are "normally repaired and replaced" without reference to what generally occurs in similar houses. Yet that is what Hartford purports to do.

Hartford's interpretation renders the entire second sentence of section 2051(b)(2), and similar language in Hartford's California Changes Endorsement, meaningless. In essence, Hartford is simply purporting to decide whether each structural component has or would have suffered future wear and tear during that structure's lifetime. This interpretation is impossible to square with either the language of section 2051(b)(2) or the Insurance Commissioner's explanation of the effect of that law. (RJN, Ex. 10, at 112-13.)

The proper interpretation of section 2051, and thus the validity of Hartford's practice "complying" with it, presents a clear, common legal question that can be answered in one stroke.

### 2. Hartford fails to pay proper Actual Cash Value by calculating sales tax after depreciation

Hartford is supposed to calculate Actual Cash Value by starting with "the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured" and then deducting "a fair and reasonable deduction for ***physical*** depreciation based upon its condition . . ." Ins. Code § 2051(b)(2) (emphasis added). The amount it would cost the insured to repair, rebuild, or replace the thing lost or injured clearly includes sales tax on the materials necessary to repair, rebuild, or replace. See *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) ("As to taxes, we easily conclude that 'the cost to repair and replace property with new materials' would

---

4       Hartford depreciates each of the items the Commissioner listed as examples. (See, e.g., Veroff Decl., ¶ 5, Ex. 4 at HARTFORD_JOHNSON 0008922-23, 0008942.)

KERR
&
WAGSTAFFE
LLP

necessarily include the state and local taxes on the materials purchased to make the repairs."). Determining this amount is the first step; reducing it by depreciation is the second. In the second step, only physical depreciation – i.e., wear and tear, can be depreciated. Sales tax is an intangible not subject to wear and tear, and thus obviously is not subject to *physical* depreciation.

Hartford violates the law by depreciating sales tax. Hartford first determines the Replacement Cost Value, which includes sales tax, and then depreciates the entire amount to determine the Actual Cash Value. This is clear from the written estimates it provides. (Veroff Decl., ¶ 5, Ex. 4 at HARTFORD_JOHNSON 0008922-23, 0008942.)[5]

In a bit of semantics, Hartford asserts that it is not depreciating tax, but is instead just calculating the tax after the components are depreciated. (Veroff Decl., ¶ 2, Ex. 1 at 52:1-53:16; ¶ 4, Ex. 3 at 104:6-106:10.) In other words, Hartford calculates replacement cost *before tax* (which is not proper Replacement Cost Value), depreciates that amount, and *then* applies a tax rate to the depreciated amount. Hartford's description does not avoid the illegality of its conduct. Instead, section 2051(b)(2) clearly states that the cost to replace, which includes sales tax, be determined first, and after, *physical* depreciation for wear and tear be applied.

Thus, whether Hartford is allowed to include less than the full tax that would be owed to repair, rebuild, or replace the lost items is again a common question of law that can be answered in one stroke.

### 3. Hartford fails to fully explain to insureds in writing the basis for depreciation as required by Regulation 2695.9(f)

Finally, Hartford fails to fully explain to its insureds, in writing, the justification for all depreciation taken, as required by Regulation 2695.9(f). Instead, Hartford provides the insured with a written estimate which simply states, for each component, the percentage and amount of depreciation taken but provides no explanation of why that amount is correct. (Veroff Decl., ¶ 4, Ex. 3 at 51:19-55:5.) Hartford admittedly does not provide a written explanation of how the

---

[5] Hartford also includes estimated labor costs. (*Id.*) Unlike sales tax, Hartford includes the full estimated labor charge in "Actual Cash Value."

depreciation amount was determined. (*Id.* ¶ 2, Ex. 1 at 147:16-148:22.) Hartford contends that this is all the regulation requires.

Whether this common Hartford practice complies with Regulation 2695.9(f) is yet another common question of law that can be answered in one stroke.

### D. HARTFORD APPLIED EACH OF THE CHALLENGED POLICIES TO MR. JOHNSON'S CLAIM

Mr. Johnson's claim provides a good illustration of each of these three problems.

*First*, Hartford applied depreciation to every single component of Mr. Johnson's structural loss when calculating his Actual Cash Value. (Veroff Decl., ¶ 5, Ex. 4 at HARTFORD_JOHNSON 0008922-23, 0008942.) Hartford thus made deductions for depreciation of components such as electrical wiring and insulation, framing, rough carpentry, insulation, and marble, all of which are non-depreciable because they are normally expected to last throughout the useful life of a structure. (*Id.*; Veroff Decl., ¶ 8, Ex. 7 at HARTFORD_JOHNSON 0002228-31.)

*Second*, Hartford calculated the Replacement Cost Value of Mr. Johnson's structure loss to include sales tax at the California rate on all components, but depreciated that amount and calculated the Actual Cash Value of sales tax. (*Id.*)

*Third*, Hartford provided Mr. Johnson with no full, written explanation of the basis for all of the deductions it took. Instead it merely provided the estimate, pursuant to its standard policy, and had some conversations with Mr. Johnson's representative. It only provided him with more information after his public adjuster demanded it. (*Id.*; Veroff Decl., ¶ 6, Ex. 5; ¶ 9, Ex. 8 at 49:4-50:19; 52:10-53:25.)

There is nothing unique about Hartford's handling of this claim. Indeed, the adjuster informed Mr. Johnson in writing that his claim was handled in accordance with Hartford's "standard approach" and it did "nothing different" with his claim. (Veroff Decl., ¶ 6, Ex. 5.) At deposition, Hartford's employees further confirmed that the method of handling Mr. Johnson's claim was consistent with Hartford's standard practices. (Veroff Decl., ¶ 4, Ex. 3 at 97:15-98:6; ¶ 2, Ex. 1 at 130:19-22, 222:15-223:6.)

KERR
— & —
WAGSTAFFE
LLP

### E.    CERTIFICATION SOUGHT FROM THIS COURT

Plaintiff seeks certification of a main class and one sub-class as follows:

**Proposed Class:**  All California residents insured under a policy issued by Hartford Casualty Insurance Company, Inc. who suffered a partial loss to a covered structure between August 13, 2011 and the present day who were not paid either (a) the limits of the policy's coverage for structural loss or (b) full replacement cost for the structural loss without deduction for depreciation.

**Proposed Non-Depreciable Component Sub-Class:** All members of the Proposed Class whose Actual Cash Value payment was reduced by depreciation to one or more of the following structural components and who did not fully recover all depreciation in a subsequent claim for replacement cost value: acoustical ceilings, baseboards, basement floor systems, bath cabinets, brick, ceilings and ceiling suspension, ceramic tile, cement, cement posts, chimneys, closet doors, closet shelves, concrete footings, concrete foundations, custom millwork, drywall, electrical wiring and insulation, engineered wood, exterior siding, fiber cement, fiberglass doors, fireplaces, floor trusses, framing, insulation, laminated strand lumber, lath, mantles, marble, natural stone, natural wood flooring, ornamental iron, plaster, plumbing, poured concrete structural systems, roof trusses, rough carpentry, rough structure, slate flagstone floors, stairs, stone, stucco, terrazzo, timber frames, toilets, trim, two-by-four studs, walls, wall panels, wood doors, and wood shutters.[6]

## III.    ARGUMENT

### A.    APPLICABLE LEGAL STANDARDS

Whether to certify a class is within the Court's discretion.  *Hopkins v. Stryker Sales*, No. 11-CV-02786-LHK, 2012 WL 1715091, at *3 (N.D. Cal. May 14, 2012).

A party seeking class certification must satisfy the four prerequisites of Rule 23(a): "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named

---

[6]    Hartford's own written policies recognize that many of these are lifetime components. (Veroff Decl., ¶ 8, Ex. 7.)

KERR
&
WAGSTAFFE
LLP

plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Arnott v. U.S. Citizenship & Immigration Servs.*, 290 F.R.D. 579, 583 (C.D. Cal. 2012) (quoting *Hanon v. Dataproducts*, 976 F.2d 497, 508 (9th Cir. 1992)).

After Rule 23(a) is met, the proposed class must also satisfy Rule 23(b)(1), (2), or (3). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). Plaintiffs here seek certification under Rule 23(b)(3) which permits class actions where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## B. THE REQUIREMENTS OF RULE 23(A) ARE MET

### 1. Numerosity is satisfied and the classes are sufficiently ascertainable

Plaintiffs satisfy the numerosity requirement under Rule 23(a)(1), because the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 304 (N.D. Cal. 2015) (finding numerosity satisfied when 11,000 persons were identified even though the "period . . . is slightly longer than the class period."); *Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 253-54 (N.D. Cal. 2015) (class of forty or more members "raises a presumption of impracticability of joinder based on numbers alone").

Plaintiffs do not need precise Class figures to satisfy numerosity. *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009); *see also In re HiEnergy Techs., Inc. Sec. Litig.*, No. 8:04CV01226 DOCJTLX, 2006 WL 2780058, at *3 (C.D. Cal. Sept. 26, 2006) ("Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied.") (quoting *In re Intermec Corp. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) 96, 178 (W.D. Wash. 1991) (citing *Weinberger v. Thornton*, 114 F.R.D. 599, 602 (S.D. Cal. 1986); *Schwartz v. Harp*, 108 F.R.D. 279, 281-282 (C.D. Cal. 1985))).

The proposed classes include *at least* 19,650 claims based on documentation provided by

Hartford.  This amount is likely less than the full class size, as Hartford has only produced documentation listing the number of claims based on the list of components Plaintiff included in the Complaint, which has been expanded upon during discovery.

The proposed classes are also sufficiently ascertainable.  Ascertainability requires objective criteria to *define* the Class, but does not require positive identification of Class Members before class certification. *See Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 238 (N.D. Cal. 2014); *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012).  In fact, as the Ninth Circuit held this month, ascertainability does not require proof of an administratively feasible method of ascertaining Class Members.  *Briseno v. ConAgra Foods, Inc.*, -- F.3d --, No. 15-55727, 2017 WL 24618, at *4 (9th Cir. Jan. 3, 2017) (upholding certification of class whose members purchased groceries but likely did not have receipts or other evidence of their purchases).

Here, Class Members can be identified based on records Hartford keeps for each claim. Under California law, insurance companies like Hartford are required to keep detailed claim files on their insureds for at least four years, including information on all payments made.  Cal. Code Regs. tit. 10, § 2695.3.  Additionally, Hartford has access to a database of estimates listing in detail the policy and claimant information, and the replacement cost, depreciation and Actual Cash Values determined for each component for each claim.  (*See* Veroff Decl., ¶ 4, Ex. 3 at 82:17-87:14; ¶ 10, Ex. 9.)  This database is easily accessible and searchable to access this information.  (Veroff Decl., ¶ 10, Ex. 9.)

### 2. Commonality is satisfied

Rule 23(a)(2) is met where "there are questions of law or fact common to the class." *Cohen v. Trump*, 303 F.R.D. 376, 382 (S.D. Cal. 2014).  All questions of fact and law need not be common to satisfy this rule. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2009).  A single common question of law or fact is sufficient to satisfy this requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).  A question is common where "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

Each of Plaintiff's four causes of action turns on common questions of law or fact. These include (1) whether Insurance Code section 2051 prohibits Hartford from depreciating certain types of structure items, (2) what those structural items are (i.e. whether each challenged item is normally subject to repair or replacement during the life of that type of structure), (3) whether Hartford is legally required to include the full sales tax calculated in the replacement value as part of Actual Cash Value or whether it can, as it does, reduce the amount estimated in line with the reduction in the value of depreciated components, and (4) whether Hartford's provision of an estimate listing the amount of depreciation taken is sufficient compliance with Regulation 2695.9(f).

Each of these questions will be answered in the same way for all class members. None depend on the individual facts of any claim. Commonality is thus easily met here.

### 3. Plaintiff's claim is typical of the proposed classes

Rule 23(a)(3) typicality is met where "the claims or defenses of the representative [plaintiffs] are typical of the claims or defenses of the class." *Brown v. Hain Celestial Grp., Inc.*, No. 11-CV-03082 LB, 2014 WL 6483216, at *11 (N.D. Cal. Nov. 18, 2014.) Under Rule 23(a)'s "permissive standards," representative plaintiffs are typical if their claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* at *12. Courts assessing typicality consider: "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (citation omitted).

Typicality and commonality prerequisites "tend to merge" because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 & n. 13 (1982).

Here, Plaintiff is clearly a member of the class. He suffered the harms alleged: his Actual Cash Value payment was reduced for depreciation on numerous structural items that have

a useful life equal to the life of the home (and thus are not *normally* subject to repair or replacement during the life of the home). (Veroff Decl., ¶ 5, Ex. 4 at HARTFORD_JOHNSON 0008922-23, 0008942.) His Actual Cash Value payment was also reduced as a result of Hartford's application of depreciation to the estimated sales tax included in the replacement value. (*Id.*) He received no full written explanation for these deductions until his representative demanded it. (Veroff Decl., ¶ 6, Ex. 5.) Indeed, the Hartford adjuster expressly told Mr. Johnson that his claim was handled consistently with Hartford's standard practices and its witnesses have confirmed that. (*Id.*; Veroff Decl., ¶ 4, Ex. 3 at 97:15-98:6; ¶ 2, Ex. 1 at 130:19-22, 222:15-223:6.) Plaintiff's claim thus satisfies the typicality requirement.

### 4. Plaintiff and his counsel are adequate

The adequacy prong of Rule 23(a)(4) is satisfied where Plaintiffs show they "will fairly and adequately protect the interests of the class." *Brown*, 2014 WL 6483216, at *14 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998)). The requisite showing is three-fold. *Id.* Class counsel must be qualified and competent; Plaintiffs and Class counsel must both show an absence of any apparent conflicts of interest with other Class Members; and Plaintiffs and Class counsel must show they will "prosecute the action vigorously" on behalf of the class. *See id.*

#### a) Plaintiffs' Counsel is Adequate.

To evaluate the adequacy of counsel, the Court "must" consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). In addition, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, Plaintiffs' Counsel satisfies all of the requirements. Plaintiffs' Counsel has invested a substantial amount of time to identify and investigate, and litigate the claims in this action and engage in discovery. (Declaration of Michael von Loewenfeldt ("von Loewenfeldt

Decl."), ¶¶ 2-7.) Plaintiffs' Counsel are experienced and knowledgeable concerning complex and insurance litigation. Indeed, Plaintiffs' Counsel represented the classes in *Kirkwood v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, 193 Cal. App. 4th 49 (2011) and *Alexander v. Farmers Ins. Co.*, 219 Cal. App. 4th 1183 (2013), both of which dealt with insurance company's similar failure to comply with Insurance Code section 2051. (*Id.*) Plaintiff's counsel has dedicated substantial resources to this case, has the resources to commit to adequately and vigorously advance the Class's interests, and will continue to do so until resolution. (*Id.*)

### b) Plaintiff is an adequate representative

As discussed above, Plaintiff's claims are typical of the Class. Plaintiff has no conflict with absent Class Members, and is presenting the same claims individually as on behalf of the class. Rule 23(a)(4)'s adequacy requirement evaluates whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the Class Members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw.*, 457 U.S. at 157 & n.13. Merely speculative conflicts will not affect adequacy. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 & n.6 (9th Cir. 2009). Additionally, as discussed above, Plaintiff's claims are typical of the Class and fall squarely within the class definition. He is prepared to continue to act as the representative plaintiff. (Declaration of G. Grant Johnson, ¶ 2.) For all of these reasons, the adequacy requirement is met.

## C. THE REQUIREMENTS OF RULE 23(B)(3) ARE MET

In addition to the requirements of Rule 23(a), Plaintiff must show that "[1] questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Common issues of fact and law predominate

Rule 23(b)(3) predominance tests if the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This inquiry is "more searching than the Rule 23(a)(2) 'commonality' inquiry." *Mortimer v. Baca*, No. 00-cv-13002-DDPSHX, 2005 WL 1457743, at *2 (C.D. Cal. May 25,

KERR
&
WAGSTAFFE
LLP

2005). "Where common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Rai*, 308 F.R.D. at 262.

Predominance analysis begins "with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Here, common issues predominate on each of Plaintiff's claims.

a) *Breach of contract*

The elements of a breach of contract claim are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Common issues predominate on these elements. Whether Hartford is allowed under California law and its California Changes endorsement to take depreciation from the types of structural items at issue here is a common question. For example, framing either is, or is not, normally repaired or replaced during the lifetime structures on a categorical basis. The same is true for each of the other structural components at issue. Indeed, that is the whole point of section 2051(b)(2), to standardize which components of a structure are not subject to physical depreciation in computing Actual Cash Value. (RJN, Ex. 10, at 112-13).

Whether Hartford is allowed to reduce the sales tax component in the manner it does is also a common issue that predominates. Hartford's approach either complies with California law or it doesn't (it doesn't). The same approach is used with all policy holders, and the answer will be the same for all as well.

Finally, whether Hartford's standard practice for documenting the basis for depreciation taken with its estimate form complies with Regulation 2695.9(f) is also a predominate question that has the same answer for all class members.

Questions as to breach are also common and predominate. Hartford's records will demonstrate which insureds had depreciation taken on various components or tax, as well as what standard form estimate was provided. Whether those facts constitute a breach is, as

discussed above, a predominant common question.

Finally, damages questions are predominately common as well. Plaintiff does not challenge the calculation of replacement cost, just the depreciation taken in reducing that replacement cost to Actual Cash Value. If Plaintiff's claims are meritorious, the damages will be easily measured as the amount of depreciation taken on items where no depreciation is allowed. This is a binary question – the damages are either zero or the amount of depreciation taken which can be shown by Hartford's records. (Veroff Decl., ¶ 10, Ex. 9.) There are thus no meaningful individual questions as to damages. Yet, even if there were, Ninth Circuit law is clear that questions about damages do not defeat class certification. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011).

### b)  Bad faith

The only substantive difference between the breach of contract and bad faith claims relates to the reasonableness of Hartford's conduct. *Maslo v. Ameriprise Auto & Home Ins.*, 227 Cal. App. 4th 626, 633 (2014).

 Hartford's conduct in establishing its practices in California contrary to Insurance Code section 2051 and Regulations Code section 2695.9(f), and its reasonableness in doing so, is a common issue, not one that differs from insured to insured. This claim too is thus predominated by common questions.

### c)  Declaratory Relief and 17200

Each of these claims present the same issues presented by the breach of contract claim. For the reasons discussed above, common questions predominate on those issues.

Accordingly, common issues of law and fact predominate across all claims. The legal inquiry across the proposed classes is the same. And the legal elements are susceptible to class-wide factual proof. The predominant questions in this case are whether Hartford's admitted policies comply with Hartford's contractual and statutory obligation to pay correct Actual Cash Value, and to properly document any depreciation taken, and what Hartford's intent was in establishing those policies. Those are common questions, susceptible to class-wide resolution, and thus b(3) certification is warranted.

## 2.    Class treatment is the superior method of resolving this dispute

This class action is also superior to other available methods of adjudication for this case. To determine whether a class action is superior to individual actions, the "matters pertinent" under Rule 23(b)(3) include "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D). "[C]ertification pursuant to Rule 23(b)(3) ... is appropriate 'whenever the actual interests of the parties can be served best by settling their differences in a single action.'" *Lilly*, 308 F.R.D. at 241.

Here, each factor weighs in favor of class action treatment. Individual class members have no significant interest in controlling the prosecution of separate actions on these common issues, as evidenced by the fact there is no other litigation concerning this controversy already pending. *Zinser*, 253 F.3d at 1190. It is desirable to concentrate the litigation in this form so that a clear and uniform answer can guide the parties' future conduct rather than risk the unfair situation of different rulings applying to different class members. *Id.* at 1193. Finally, there are no likely difficulties in managing a class action. The facts that demonstrate class membership, breach, and damages are all available in Hartford's electronic records. The superiority requirement of Rule 23(b)(3) is thus also satisfied here.

## IV.    CONCLUSION

This case presents an ideal scenario for class treatment. The case rises and falls on which structural components are subject to depreciation under California law, whether Hartford must include the full estimated sales tax in an Actual Cash Value calculation, and whether Hartford's estimates provide sufficient information to comply with Regulation 2695.9(f). Where Hartford is shown to have taken improper depreciation where none was allowed, the amount (and thus the remedy) is readily available in Hartford's own records. Accordingly, Plaintiff respectfully requests the Court to grant his motion for class certification.

Dated: January 20, 2017

**KERR & WAGSTAFFE LLP**


By:  /s/ Michael von Loewenfeldt
MICHAEL VON LOEWENFELDT

Attorney for Plaintiff
G. GRANT JOHNSON