MICHAEL D. MULVANEY (*pro hac vice*)
mmulvaney@maynardcooper.com
CHRISTOPHER C. FROST (*pro hac vice*)
cfrost@maynardcooper.com
LINDA B. OLIVER (SBN 166720)
loliver@maynardcooper.com
MAYNARD, COOPER AND GALE, LLP
600 Montgomery Street, Suite 2600
San Francisco, CA 94111
Telephone: (415) 704-7433
Facsimile: (205) 714-6415

Attorneys for Defendant
HARTFORD CASUALTY INSURANCE COMPANY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G. GRANT JOHNSON, an individual, on behalf of himself and a class of similarly situated persons,<br><br>        Plaintiff,<br><br>    v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY, an Indiana corporation; and DOES 1–25,<br><br>        Defendants. | ) Case No. 3:15-cv-04138-WHO<br>)<br>) Hon. William H. Orrick<br>)<br>) **HARTFORD CASUALTY INSURANCE**<br>) **COMPANY'S BRIEF IN OPPOSITION TO**<br>) **PLAINTIFF'S MOTION FOR CLASS**<br>) **CERTIFICATION**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

        Defendant, by its undersigned counsel, hereby submits this Brief in Opposition to the Motion

for Class Certification and Memorandum of Points and Authorities in Support Thereof filed by the

Plaintiff.


Dated: March 3, 2017                     MAYNARD, COOPER & GALE, P.C.

                                By: */s/ Christopher C. Frost*
                                    Michael D. Mulvaney
                                    Christopher C. Frost
                                    Linda B. Oliver
                                    *Attorneys for Defendant Hartford Casualty*
                                    *Insurance Company*

1

**TABLE OF CONTENTS**

2  PRELIMINARY STATEMENT ...............................................................................-1-

3  I. BACKGROUND .............................................................................................-2-

4       A. The Fire Loss.........................................................................................-3-

5       B. Adjustment of the Loss..........................................................................-3-

6       C. Statutes and Regulatory Provisions at Issue ........................................-6-

7       D. Hartford's Motion for Summary Judgment...........................................-6-

8       E. Plaintiff's Motion for Class Certification .............................................-6-

9  II. PLAINTIFF'S BURDEN OF PROOF ...........................................................-7-

10 III. PLAINTIFF LACKS STANDING ...............................................................-8-

11 IV. NUMEROUS INDIVIDUAL ISSUES PREDOMINATE OVER ANY ALLEGED COMMON
12 ISSUES ...............................................................................................................-10-

13      A. Proving a Breach of Contract Requires Proving Actual Damage  ...........-10-

14      B. Plaintiff's Own Claim Demonstrates Lack of Predominance...................-14-

15      C. Plaintiff's "Method" of Calculating Monetary Relief is Not Sufficient.....-15-

16      D. Other Policy Related Reasons Establish the Lack of Predominance.........-18-

17      E. The Bad Faith Claims are Even More Fact-Intensive and Inappropriate for Class Treatment
18      ............................................................................................................-19-

19 V. OTHER CLASS CERTIFICATION ISSUES ..................................................-19-

20      A. A Class Action Is Not Superior Here .......................................................-20-

21      B. Plaintiff Is Not Typical of the Class He Seeks to Represent ....................-21-

22      C. Plaintiff Cannot Adequately Represent the Class....................................-23-

23 Conclusion ...........................................................................................................-24-

24

25

26

27

28

- i -

HARTFORD CASUALTY INSURANCE COMPANY'S
BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 3:15-CV-04138-WHO

## TABLE OF AUTHORITIES

### United States Supreme Court Cases

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997) .................................................................................. 18, 20

*Comcast Corporation v. Behrend,*
  133 S. Ct. 1426 (2013) ............................................................................. 10, 16

*Halliburton Co. v. Erica P. John Fund, Inc.,*
  134 S. Ct. 2398 (2014) ..................................................................................... 7

*Hansberry v. Lee,*
  311 U.S. 32 (1940) ......................................................................................... 23

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) ..................................................................................... 8

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ......................................................................................... 7

### United States Courts of Appeals Cases

*Aguilera v. Pirelli Armstrong Tire Corporation,*
  223 F.3d 1010 (9th Cir. 2000) ....................................................................... 11

*Berger v. Compaq Computer Corporation,*
  257 F.3d 475 (5th Cir. 2001)......................................................................... 24

*B.C. v. Plumas Unified School District,*
  192 F.3d 1260 (9th Cir. 1999) ......................................................................... 8

*Crutchfield v. Sewerage and Water Board of New Orleans,*
  829 F.3d 370 (5th Cir. 2016).......................................................................... 10

*Doyle v. Chrysler Group, LLC,*
  663 F. App'x 576 (9th Cir. 2016) .................................................................. 21

*Ellis v. Costco Wholesale Corporation,*
  657 F.3d 970 (9th Cir. 2011).......................................................................... 8, 9

*Enger v. Allstate Insurance Company,*
  407 F. App'x 191 (9th Cir. 2010) .............................................................. 12, 18

*Halvorson v. Auto-Owners Insurance Company,*
  718 F.3d 773 (8th Cir. 2013)......................................................................... 13

- ii -

HARTFORD CASUALTY INSURANCE COMPANY'S
BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 3:15-CV-04138-WHO

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)...............................................................23

*Hanon v. Dataproducts Corporation*,
    976 F.2d 497 (9th Cir. 1992)................................................................21

*Hinojos v. Kohl's Corporation*,
    718 F.3d 1098 (9th Cir. 2013)...............................................................9

*Kartman v. State Farm Mutual Automobile Insurance Company*,
    634 F.3d 883 (7th Cir. 2011).................................................................13

*Lierboe v. State Farm Mutual Automobile Insurance Company*,
    350 F.3d 1018 (9th Cir. 2003)........................................................8, 9, 10

*Mayfield v. United States*,
    599 F.3d 964 (9th Cir. 2010).................................................................9

*Mazza v. American Honda Motor Company, Inc.*,
    666 F.3d 581 (9th Cir. 2012)............................................................7, 10

*Munns v. Kerry*,
    782 F.3d 402 (9th Cir. 2015).................................................................9

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009).............................................................20

### United States District Court Cases

*Achziger v. IDS Property Casualty Insurance Company*,
    No. C14-5445 BHS, 2016 WL 1276048 (W.D. Wash. Apr. 1, 2016)...................20

*Astiana v. Kashi Co.*,
    291 F.R.D. 493 (S.D. Cal. 2013).............................................................10

*Banarji v. Wishire Consumer Capital, LLC*,
    No. 14-cv-2967-BEN, 2016 WL 595323 (S.D. Cal. Feb. 12, 2016)...............21, 22

*Benedict v. Hewlett-Packard Co.*,
    314 F.R.D. 457 (N.D. Cal. 2016).............................................................10

*Brown v. Federal Express Corporation*,
    249 F.R.D. 580 (C.D. Cal. 2008).............................................................20

*Campion v. Old Republic Home Protection Company, Inc.*,
    272 F.R.D. 517 (S.D. Cal. 2011).............................................................13

- iii -

HARTFORD CASUALTY INSURANCE COMPANY'S
BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 3:15-CV-04138-WHO

*Dietz v. Comcast Corporation*,
   No. C 06-06352 WHA, 2007 WL 2015440 (N.D. Cal. July 11, 2007)...................................12

*Ellis v. J.P. Morgan Chase & Co.*,
   No. 12-cv-3897-YGR, 2015 WL 9178076 (N.D. Cal. Dec. 17, 2015) .....................................7

*Elite Logistics Corp. v. MOL America Inc.*,
   No. 11-2952-DDP, 2016 WL 409650 (C.D. Cal. Dec. 2, 2016)..............................................22

*Harris v. Vector Marketing Corporation*,
   753 F. Supp. 2d 996 (N.D. Cal. 2010) ..................................................................................23

*In re Graphics Processing Units Antitrust Litigation*,
   253 F.R.D. 478 (N.D. Cal. 2008) ..........................................................................................16

*In re Facebook, Inc. PPC Advertising Litigation*,
   282 F.R.D. 446 (N.D. Cal. 2012) ..........................................................................................23

*Jones v. ConAgra Foods, Inc.*,
   No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) .....................................9

*Khasin v. R.C. Bigelow, Inc.*,
   No. 12-cv-2204-WHO, 2016 WL 1213767 (N.D. Cal. Mar. 29, 2016)...........................10, 16

*Kraetsch v. United Service Automobile Association*,
   No. 4:14-cv-264-CEJ, 2015 WL 1457015 (E.D. Mo. Mar. 30, 2015) ...................................13

*Lucas v. Breg*,
   No. 15-cv-258-BAS, 2016 WL 6125681 (S.D. Cal. Sept. 30, 2016)............................8, 9, 10

*Lee v. Pep Boys-Manny Moe & Jack of California*,
   No. 12-cv-05064-JSC, 2015 WL 9480475 (N.D. Cal. Dec. 23, 2015) ...................................23

*Mills v. Foremost Insurance Company*,
   269 F.R.D. 663 (M.D. Fla. 2010) ..........................................................................................13

*Nguyen v. St. Paul Travelers Insurance Company*,
   No. 06-4130, 2008 WL 4691685 (E.D. La. Oct. 22, 2008)...................................................13

*O'Connor v. Uber Technologies, Inc.*,
   No. C-13-3826 EMC, 2015 WL 5138097 (N.D. Cal. Sept. 1, 2015)......................................23

*Schafer v. State Farm Fire & Casualty Company*,
   No. 06-8262, 2009 WL 2391238 (E.D. La. Aug. 3, 2009) ....................................................13

*Shum v. Intel Corporation*,
   650 F. Supp. 2d 1063 (N.D. Cal. 2009) ................................................................................11

- iv -

HARTFORD CASUALTY INSURANCE COMPANY'S
BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 3:15-CV-04138-WHO

*Spiers v. Liberty Mutual Fire Insurance Company*,
    No. 06-4493, 2006 WL 4764430 (E.D. La. Nov. 21, 2006) .................................................. 13

*Van Colin v. County of Ventura*,
    189 F.R.D. 583 (C.D. Cal. 1999) ......................................................................................... 21

**California State Court Cases**

*Basurco v. 21st Century Insurance Company*,
    133 Cal. Rptr. 2d 367 (Cal. Ct. App. 2003) .......................................................... 12, 19, 20

*Chateau Chamberay Homeowners Association v. Associated Insurance Company*,
    108 Cal. Rptr. 2d 776 (Cal. Ct. App. 2001) ....................................................................... 19

*Gourley v. State Farm Mutual Automobile Insurance Company*,
    822 P.2d 379 (Cal. 1991) .................................................................................................... 11

*Habitat Trust for Wildlife, Inc. v. City of Rancho-Cucamonga*,
    96 Cal. Rptr. 3d 1306 (Cal. Ct. App. 2009) ...................................................................... 11

*Lincoln Fountain Villas Homeowners Association v. State Farm Fire & Casualty Insurance Company*,
    39 Cal. Rptr. 3d 245 (Cal. Ct. App. 2006) ........................................................................ 14

*Newell v. State Farm General Insurance Company*,
    13 Cal. Rptr. 3d 343 (Cal. Ct. App. 2004) .............................................................. 12, 20, 21

**Statutes**

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ...................................................................................... 9

Cal. Ins. Code § 2051(b) ...................................................................................................... passim

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................. passim

**Regulations**

10 Cal. Code Regs. § 2695.9 .................................................................................................... 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

This lawsuit arises from a fire that occurred in Plaintiff's pre-1906 commercial property. Hartford ultimately paid Plaintiff over $1 million on his claim, and it is now undisputed that Hartford actually paid him *more* than he spent to repair his commercial building. This dilemma resulting from Hartford's undeniable *over*-payment, hereafter "Johnson's Dilemma," is fundamental and fatal to both his individual and class claims.[1]

State and federal courts have routinely rejected the class claims Plaintiff asserts. They have held policyholders' claims for breach of contract, bad faith, and unfair competition that are based on an insurer's alleged practice of denying or underpaying property damage claims cannot be certified for class treatment. Such claims are unavailable because (1) the fact-specific, individualized liability and damages determinations necessarily raised by such claims overwhelm any common issues and (2) the class action device is not superior to each class member pursuing his own claim because significant dollar amounts are involved and because of each member's heightened interest in controlling his own claim for damage to a valuable and unique asset like real property.

Plaintiff's claim is no different. His dilemma begins with the fact that he was paid more than he was owed under the Policy. The same individualized claim analysis that exposed Johnson's Dilemma will have to be undertaken on a claim-by-claim basis for each of the 19,000+ putative class members. And this is just the beginning: some of the other highly fact-specific considerations that must be examined on a claim-by-claim basis include (1) whether the estimate was the product of negotiation and compromise between the insurer and insured (or as is the case here, the public adjuster retained by Plaintiff); (2) whether there were alleged miscalculations in determining the

---

[1] Hartford's Motion for Summary Judgment is currently pending before the Court. (D.E. 36). In addition to demonstrating that Plaintiff's individual claims fail for numerous reasons—including lack of standing, that he has suffered no damages, that Hartford's conduct was consistent with the plain language of § 2051, and that Hartford did not "depreciate" sales tax—the Motion for Summary Judgment highlights some of the individual inquiries that must be conducted for every class member. Should this Court grant Hartford's Motion for Summary Judgment, Plaintiff's Motion for Class Certification would be rendered moot.

necessary cost of repairs; and (3) whether there was fraud or other deceitful conduct by the insured or his public adjuster in submitting the insurance claim.

Likewise, a class action is not a "superior" method to adjudicate these claims. Plaintiffs' claim alone—which seeks more than $30,000 in compensatory damages, plus punitive damages and attorneys' fees—is certainly not too small to warrant an individualized lawsuit. Moreover, given the longstanding view that a person's "home is his castle," it defies credulity that putative class members would idly stand by if in fact their property insurer was wrongfully denying or underpaying claims by tens of thousands of dollars.

In addition to the highly individualized considerations that must be examined on a claim-by-claim basis, Plaintiff's individual claim presents other issues evidencing his lack of typicality with other class members and that undermine his adequacy as a class representative. As a result of certain conduct committed during the claims process, Plaintiff's own claim is subject to unique defenses that will distract from his prosecution of the unnamed class members' claims. Adequacy is also a problem because Plaintiff's credibility could be called into question and because he has ceded control of the case to his attorneys—who he was introduced to by the public adjuster that he ultimately paid more than $100,000 in fees.

Johnson's Dilemma is one he cannot escape. A similarly thorough inquiry will need to be undertaken to determine whether each class member was also overpaid. There is simply no way to avoid examining the individual circumstances of every class member's individual claims to determine Hartford's potential liability—if any—to each class member, as well as to determine any defenses Hartford may have to such claims. Class certification should be denied.

## I.    BACKGROUND

This case arises out of a fire that caused a partial structural loss to Plaintiff's pre-1906 commercial property in San Francisco's Lower Haight neighborhood. Plaintiff insured the property through Hartford, and his Policy indemnified him for his loss in several respects. Most relevant for present purposes, his Policy provided coverage on a replacement cost basis, insuring him for the full replacement cost value ("RCV") of any partial loss of structural components of his property.

1

### A. The Fire Loss

2   The insured property at issue is a commercial building located at 321–329 Divisadero St.

3   (Christopher Frost Declaration ("Frost Decl.") at ¶ 2, Ex. 1). Given its age, it had undergone various

4   repairs during its lifetime, including repairs to its plumbing and electrical systems. (Frost Decl. at ¶ 4,

5   Ex. 11). On December 20, 2013, the building suffered a partial loss as a result of a fire. (Frost Decl. at

6   ¶ 5, Ex. 1, 2). Johnson reported the loss to his property insurer, Hartford, and Hartford assigned

7   general adjuster Jeff Kaiser to adjust the loss. (Frost Decl. at ¶¶ 6–7, Exs. 3, 12). For his part, Johnson

8   retained public adjusters Greenspan Co./Adjusters International who assigned the file to Masood

9   Khan.[2] (Frost Decl. at ¶ 8, Exs. 4, 10). Greenspan surveyed the loss site on February 13, 2014. (Frost

10   Decl. ¶ 9, Ex. 5). Following this visit, Khan did not believe the building loss exceeded $500,000.

11   (Frost Decl. ¶ 10, Ex. 10).

12   ### B. Adjustment of the Loss

13   During the following months, Hartford adjusted the loss and paid Plaintiff a total of

14   $1,012,461.29 for the various damages caused by the fire. (Frost Decl. ¶ 12, Ex. 1). The loss payment

15   provisions of the Policy state that Hartford will pay for Covered Property based on the property's

16   replacement cost. (Frost Decl. at ¶ 11, Ex. 3). Prior to making a replacement cost payment, however,

17   the Policy states that Hartford will make an interim Actual Cash Value ("ACV") payment. (Frost

18   Decl. at ¶ 12, Ex. 3). The Policy provides:

19   (b) We will not pay on a replacement cost basis for any loss or damage until the lost or
20   damaged property is actually repaired or replaced, and then only subject to
   deduction for depreciation. Prior to such repair or replacement, and in accordance
21   with the terms applicable Loss Payment conditions in this policy, we will pay the
   actual cash value of the lost or damaged property as described in this endorsement.
22   If the actual cash value does not exhaust the applicable Limit of Insurance, we will
   then pay the difference between the actual cash value and the replacement cost,
23   provided that the repair or replacement is completed:

24   a.   Within 12 months after our payment of the actual cash value; or

25

26

27   ---
   [2] Greenspan charged Johnson a fee for its services based on Hartford's claim payment. It ultimately
28   recovered approximately $100,000 for its efforts. (Frost Decl. at ¶ 8).

b.  Within 24 months after our payment of the actual cash value if the loss or damage relates to a state of emergency as described in Section 8558 of the Government Code;

unless we extend the time period for good cause.

The foregoing provisions do not constitute a waiver of our right to deny the claim for any valid reason or to restrict payment in cases of suspected fraud.

2.  Actual cash value is determined as follows:

a.  In the event of a total loss to a building or structure, actual cash value is calculated as the Limit of Insurance applicable to that building or structure or the fair market value of the building or structure, which ever is less.

b.  In the event of a partial loss to a building or structure, actual cash value is calculated as shown below, which ever is less:

(1)  The amount it would cost to repair, rebuild or replace the property less a fair and reasonable deduction for physical depreciation of the components of the building or structure that are normally subject to repair or replacement during its useful life. Physical depreciation is based upon the condition of the property at the time of the loss;

(2)  The limit of Insurance applicable to the property.

(Frost Decl. at ¶ 13, Ex. 3).

An ACV payment, therefore, is based on an estimate of the cost to repair the property, less a reasonable deduction for depreciation. Here, Kaiser and Khan worked cooperatively to develop an estimate of the cost to repair the building and ultimately agreed on a replacement cost of $678,561.80. (Frost Decl. at ¶ 16, Exs. 7, 10). Based on this estimate, Hartford made an ACV payment of $570,004.38. Hartford paid an additional $161,707.74 for other building-related items for a total building-related claim payment of $731,712.12. (Frost Decl. at ¶ 17, Exs. 1, 8).

While the Policy provides that the policyholder may recover based on his actual replacement costs so long as those costs eventually exceed the interim ACV payment, **Johnson never sought to recover any amount beyond the money that Hartford initially paid because Hartford's payments exceeded Plaintiff's actual repair costs**. (Frost Decl. at ¶ 20–21, Exs. 9, 11). As Johnson testified:

Q.      My question is very specifically: Hartford paid you $731,000 to rehab the building?

A.      Uh-huh.

Q.      You spent $644,000 to rehab the building. Hartford paid you $90,000 more for that specific item, to rehab the building, than you actually spent; correct?

MR. LABAR: That—that—the objections are vague, and it misstates the document and his testimony. You may answer.

THE WITNESS: Yes.

MR. MULVANEY: Okay.

Q.      And, after this point in time when your public adjuster told you you would not be able to recover depreciation because you didn't exceed the ACV, you did not seek that? You never sought to recover the replacement cost value?

A.      No. I didn't qualify.

(Frost Decl. at ¶ 21, Ex.15).

Separately, the Policy limits Hartford's total liability to *actual repair* costs. It states:

We *will not pay more* for physical loss or physical damage on a replacement cost basis than the *least* of:

(i)     The cost to replace, on the same premises, the physically lost or physically damaged property with other property of comparable material and quality and which is used for the same purpose; or

(ii)    The amount *you actually spend* that is necessary to repair or replace the physically lost or physically damaged property.

(Frost Decl. at ¶ 14, Ex. 3 (emphasis added)).

Put simply, Johnson did not "qualify" because he had already received more coverage than he was owed under the policy. Despite having recovered more than $730,000 from Hartford for building damage that Plaintiff's own agent valued at less than $500,000, Plaintiff now disputes the sufficiency of Hartford's interim ACV payment and whether the basis for Hartford's deductions for depreciation were adequately communicated to him. Hartford, however, explained its depreciation in a written estimate, and Plaintiff's own agent testified that he understood the grounds for Hartford's deductions. (Frost Decl. at ¶ 18, 23, Exs. 10, 12).

1

## C.  Statutes and Regulatory Provisions at Issue

2
3
4
5
6
7
8
9
10
11
12

Plaintiff's entire theory of liability hinges on a reinterpretation of California Insurance Code § 2051(b), which mandates that depreciation of building components in the adjustment of a structural loss be applied through an individual analysis of the condition of each component in the context of the particular building being adjusted—in the context of "that structure." In the Complaint, however, Plaintiff's lawyers invite the Court to amend the statute by implying into it a list of building components that § 2051(b) should per se prohibit from being depreciated no matter the condition of component or structure. (Doc. 1-1 ¶ 13). Plaintiff's Motion for Class Certification adds nearly forty *more* components on top of those listed in the Complaint. (Doc. 37, pp. 3–4). Plaintiff also contends that Hartford violated § 2051's implicit prohibition against "depreciating" sales tax, as well as the requirements in California Code of Regulations § 2659.9 to provide the basis for "any adjustment" to the claimant "in writing."

13

## D.  Harford's Motion for Summary Judgment

14
15
16
17
18
19
20
21
22
23
24
25

On January 20, 2017, Harford filed its Motion for Summary Judgment with respect to Johnson's individual claim on the following grounds: (a) Plaintiff lacks standing to pursue his claims; (b) Plaintiff has no damages to support his breach of contract claim; (c) the plain language of § 2051 is fatal to Plaintiff's Claim for Declaratory Relief; (d) Hartford did not "depreciate" sales tax in violation of the policy or § 2051; (e) Plaintiff's bad faith claim fails as a matter of California law; and (f) Plaintiff's Unfair Competition Law claim fails because there has been no underlying violation of California law. (Doc. 36). Johnson's Dilemma is a central tenet of the motion. Hartford also argues that, separate and apart from Johnson's Dilemma, he cannot prove the statutory violation he alleges because § 2051(b) simply does not say what Plaintiff wants it to say regarding the depreciation of building components and neither the Policy nor California law support Plaintiff's claim that Hartford wrongfully "depreciated" sales tax. Hartford paid Plaintiff the sales tax he was due and paid Plaintiff more than enough to repair the damaged property.

26

## E.  Plaintiff's Motion for Class Certification

27

Plaintiff's Complaint and the resulting discovery was based upon a class definition of:

28

1
2
3
4
5

> All California residents insured under a HARTFORD insurance who suffered a partial loss of a covered structure within the applicable statute of limitations period including any period of tolling who was not paid the limits of the applicable coverage and whose indemnity payment for the structure was decreased as a result of depreciation of sales tax and/or one or more of the following structural components: baseboards/trim, cement/concrete/asphalt, doors, drywall, electrical wiring, fireplace, framing/rough carpentry, insulation, lath and plaster, masonry, marble, ornamental iron, plumbing, stucco, and/or stairs.

6

(Doc. 1-1 ¶ 2). For the first time in his Motion for Class Certification and without any explanation,

7

Plaintiff amended his class definition by exempting policyholders who received "full replacement

8

cost for the structural loss without deduction for depreciation." (Doc. 37, p. 9). Plaintiff also included

9

a subclass made up of policyholders whose ACV payment was "reduced" by depreciation of any of a

10

list of 40+ structural components including electrical wiring, exterior siding, natural wood flooring,

11

plumbing, stucco, and wood shutters. None of the structural components identified by Plaintiff are set

12

forth in the actual statute. (Doc. 37, pp. 3–4).

13

## II.    PLAINTIFF'S BURDEN OF PROOF

14

Rule 23 is not a "mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

15

(2011) ("*Dukes*"). "The class action is an exception to the usual rule that litigation is conducted by

16

and on behalf of the individual named parties only." *Id.* at 348 (internal quotation marks omitted). In

17

a class action, before certification, "the trial court must conduct a rigorous analysis to determine

18

whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda*

19

*Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). This often

20

requires Courts to "probe behind the pleadings before coming to rest on the certification question."

21

*Dukes,* 564 U.S. at 350. The plaintiff "must actually *prove*—not simply plead—that their proposed

22

class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of

23

Rule 23(b)(3)." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014) (emphasis

24

in original). When a plaintiff fails to carry his burden, class certification must be denied. *Id.*; *see also*

25

*Ellis v. J.P. Morgan Chase & Co.,* No. 12-cv-3897-YGR, 2015 WL 9178076, *4 (N.D. Cal. Dec. 17,

26

2015) (denying class certification based on failure to carry burden of proof), *appeal docketed*, No. 16-

27

17005 (9th Cir. Nov. 1, 2016).

28

1    Plaintiff seeks certification under Rule 23(b)(3), which requires that he prove—in addition to

2    the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy—that questions

3    "common to class members predominate over any questions affecting only individual members, and

4    that a class action is superior to other available methods for fairly and efficiently adjudicating the

5    controversy." Fed. R. Civ. P. 23(a)–(b)(3).

6    **III.    PLAINTIFF LACKS STANDING**

7    Plaintiff's claims cannot be certified at the threshold because he lacks Article III standing to

8    sue for each of his claims. *Lucas v. Breg*, No. 15-cv-258-BAS, 2016 WL 6125681, *15 (S.D. Cal.

9    Sept. 30, 2016). "In a class action, the plaintiff class bears the burden of showing that Article III

10   standing exists." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011). "That a suit may

11   be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent

12   a class must allege and show that they personally have been injured, not that injury has been suffered

13   by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 136 S. Ct.

14   1540, 1547 n.6 (2016) (internal quotation marks omitted). As discussed in Hartford's Motion for

15   Summary Judgment, Plaintiff lacks Article III standing for each claim he asserts. *See Ellis*, 657 F.3d

16   at 978 ("Plaintiffs must show standing with respect to each form of relief sought."). Plaintiff's

17   jurisdictional failings are equally fatal to his quest for class certification.

18   Here, Plaintiff seeks to represent a 23(b)(3) damages class for breach of contract and bad faith

19   claims, but as evidenced by Johnson's Dilemma, he does not have the requisite injury-in-fact. The

20   Policy outlined it would pay Plaintiff no more than the amount he actually spent to repair or replace

21   his damaged property. (Frost Dec. ¶¶ 12–14; Doc. 36, pp. 14–15). And it is undisputed that Hartford

22   paid Plaintiff $90,000 *more* than his actual replacement costs. (Frost Dec. ¶¶ 17, 20, Exs. 1, 8, 9;

23   Doc. 36, p. 15). No relief provided by this Court could possibly "redress" an alleged breach where

24   there is no injury.

25   Plaintiff's lack of standing is "dispositive" of his motion for class certification. *Lierboe v.

26   State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022–23 (9th Cir. 2003). That is so because "[a] class

27   of plaintiffs does not have standing to sue if the named plaintiff does not have standing." *B.C. v.

28

*Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999). As the Ninth Circuit has explained, if the named plaintiff does not have a claim for breach-of-contract or bad faith, he "cannot represent others who may have such a claim, and [his] bid to serve as a class representative must fail." *Lierboe*, 350 F.3d at 1022.

Tellingly, Plaintiff does not seeks class certification under 23(b)(2) for his claims for declaratory relief and injunctive relief pursuant to California Business and Professional Code § 17200. But even if Plaintiff did seek to represent a class for those injunctive claims, that bid would fail. Plaintiff has not—and cannot—establish the "certainly impending" threat of future injury necessary for injunctive standing. *Munns v. Kerry*, 782 F.3d 402, 409 (9th Cir. 2015) ("The Supreme Court has repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that [a]llegations of possible future injury are not sufficient." (internal quotation marks omitted)). Plaintiff has identified no "real or immediate threat . . . that he will again be wronged" by Hartford's depreciation practices. *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) ("Once a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a real or immediate threat . . . that he will again be wronged in a similar way." (internal quotation marks omitted)). Plaintiff also has failed to establish that he suffered an economic injury necessary for injunctive relief under § 17200, California's Unfair Competition Law. *Compare Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013), *as amended on denial of reh'g* (July 8, 2013) (California's UCL "requires a plaintiff to demonstrate 'some form of economic injury' as a result of his transactions with the defendant[.]"), *with supra* Doc. 36 at p. 15 (explaining that Plaintiff received more compensation than he was promised under the Policy). Put simply, Plaintiff does not have standing to pursue his own injunctive or declaratory relief claims, much less to represent those of a class. "[W]ithout standing to seek injunctive relief, Plaintiff[] cannot certify a class on the basis of such relief." *See Lucas*, 2016 WL 6125681, at *15; *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, *24 (N.D. Cal. June 13, 2014) (denying class certification pursuant to Rule 23(b)(2) where named plaintiffs lacked standing to pursue injunctive relief).

1    Because Plaintiff lacks standing to pursue any of his claims, "the court need never reach the

2    class action issue[,]" and his claims are due to be dismissed at the threshold. *Lierboe*, 350 F.3d at

3    1022 (internal quotation marks omitted).

4    **IV.    NUMEROUS INDIVIDUAL ISSUES PREDOMINATE OVER ANY ALLEGED COMMON ISSUES**

5    To satisfy the predominance requirement, a plaintiff must have evidentiary proof that

6    "questions of law or fact common to class members predominate over any questions affecting only

7    individual members." Fed. R. Civ. P. 23(b)(3); *Mazza,* 666 F.3d at 588. This is a more exacting

8    inquiry than the other Rule 23 requirements. *Astiana v. Kashi Co.*, 291 F.R.D. 493, 504 (S.D. Cal.

9    2013) ("The predominance inquiry under Rule 23(b) is more rigorous as it tests whether proposed

10   classes are sufficiently cohesive to warrant adjudication by representation." (internal quotation marks

11   omitted)). To satisfy the requirement to show that common questions predominate over individual

12   ones, the plaintiff must offer common proof on the core issues in the case, which "obviate[s] the need

13   for individualized inquiries." *Benedict v. Hewlett-Packard Co.,* 314 F.R.D. 457, 474 (N.D. Cal. 2016)

14   (denying certification on predominance grounds where the "common evidence Plaintiffs have offered

15   does not suffice to make these determinations [as to the validity of Plaintiffs' claims].")*; Lucas,* 2016

16   WL 6125681, at *12 ("common questions will not predominate where the crucial legal and factual

17   issues in the case require individualized analysis"); *Crutchfield v. Sewerage and Water Bd. of New

18   Orleans,* 829 F.3d 370, 378 (5th Cir. 2016) (predominance inquiry "requires assessing all the issues

19   in a case—including damages—and deciding whether the common ones will be more central than the

20   individual ones."). The plaintiff must also demonstrate that "damages are capable of measurement on

21   a classwide basis." *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1433 (2013). And as this Court has

22   recently stated, "the damages methodology must be tied to the plaintiff's theory of liability." *Kashin

23   v. R.C. Bigelow, Inc.,* No. 12-cv-2204-WHO, 2016 WL 1213767, *2 (N.D. Cal. Mar. 29, 2016).

24   **A.   Proving a Breach of Contract Requires Proving Actual Damage**

25   Plaintiff's primary certification argument rests on the allegation that the manner in which

26   Hartford depreciates certain components and allegedly depreciates sales tax when determining ACV

- 10 -

1  violates section 2051(b).[3] An analysis of Plaintiff's proposed class action must begin with a review of

2  the substantive elements that Plaintiff and each of the individual class members must prove in order

3  to establish a right to recover for each of the claims asserted. Plaintiff's primary claim (on which all

4  of the other claims are based) is a purported breach of contract.[4] To establish a breach of contract

5  under California law, Plaintiff must prove: (1) the existence of a valid, enforceable contract, (2) that

6  plaintiff performed or tendered performance of her contractual obligations (or was excused from

7  performance), (3) the defendant breached its contractual obligations, and that (4) the defendant's

8  breach caused injury to the plaintiff. *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 96

9  Cal. Rptr. 3d 1306, 1332 (Cal. Ct. App. 2009). In fact, under California law "a breach of contract is

10  not actionable without damage." *Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1077 (N.D. Cal. 2009)

11  (internal quotation marks omitted). The "breaching party is only liable to place the non-breaching

12  party in the *same position as if the specific breach had not occurred*." *Id.* (emphasis added).

13  Therefore, Plaintiff and each of the class members must show "appreciable and actual damage" as an

14  element of their breach of contract claim. *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010,

15  1015 (9th Cir. 2000).

16          Here, the allegation that Hartford purportedly employs standardized adjusting procedures for

17  calculating ACV is not sufficient to establish that it breached a contract in a particular claim, even if

18  those standardized procedures are allegedly flawed. That is **because each insured still needs to**

19

20  [3] As set forth in its Motion for Summary Judgment, Hartford disputes Plaintiff's interpretation of
§ 2051—which augments it to include an across-the-board prohibition against deducting depreciation
21  for certain unlisted structural components. (Doc. 36, pp. 18–22). Hartford also disputes that it
depreciates sales tax. (Doc. 36, pp. 22–24). However, even if Plaintiff's theories were correct,
22  certification would still be improper because of the individualized nature of proof required to
establish he is entitled to relief. And if the statute means only what it says, the whole basis for
23  Plaintiff's claims fails: not only can there be no class certified, but the entire action should be
dismissed.

24  [4] Plaintiff's claim for breach of the implied covenant of good faith and fair dealing likewise requires a
showing of damages proximately caused by the alleged beach and the amount of such damages.
25  *Gourley v. State Farm Mut. Auto. Ins. Co.*, 822 P.2d 374, 379 (Cal. 1991) ("it is the financial loss or
risk of financial loss which defines the cause of action" for a bad faith claim). Plaintiff also alleges
26  that "[a]s a direct and proximate result of Hartford's violation of the [UCL], Plaintiff and the Class
have suffered injury and will continue to suffer injury as a result of the underpayment of the actual
27  cash value of their losses," thereby making the fact and amount of any alleged loss and proximate
causation essential to proving a statutory violation for each member of the Class. (Doc. 1-1 ¶ 51.)

28

1   **individually prove his or her entitlement to additional contract benefits**. *Newell v. State Farm*

2   *Gen. Ins. Co.*, 13 Cal. Rptr. 3d 343, 350 (Cal. Ct. App. 2004); *Enger v. Allstate Ins. Co.,* 407

3   F. App'x 191, 193 (9th Cir. 2010) (recognizing that viability of breach of contract, breach of the

4   covenant of good faith and fair dealing, and California UCL claims all required an initial finding of

5   whether insurance claim "in fact was undervalued"); *Dietz v. Comcast Corp.*, No. C 06-06352 WHA,

6   2007 WL 2015440, *6 (N.D. Cal. July 11, 2007) (denying certification where "[i]t would be

7   impossible to determine, on class-wide proof, whether all [plaintiffs] were harmed" by the

8   defendant's alleged conduct).

9         *Newell* is a prime example of why class certification is not appropriate even when, as here, the

10   plaintiff's class theory arises from allegedly standardized adjusting procedures. 13 Cal. Rptr. 3d at

11   343. In *Newell*, the California Court of Appeal for the Second District assumed that State Farm had a

12   uniform practice of taking improper deductions for depreciation on first-party homeowners claims—

13   similar to the practice Plaintiff alleges Hartford employs. *Id.* at 347, 351. Yet, the court refused to

14   certify a class. It held that even if State Farm had an improper practice, each class member would still

15   have to prove that he was not paid the amount of money owed under his insurance contract. Relying

16   on *Basurco v. 21st Century Insurance Company*, 133 Cal. Rptr. 2d 367 (Cal. Ct. App. 2003), the

17   *Newell* court held:

18   
19           Even if State Farm and Farmers adopted improper claims practices to adjust
         Northridge earthquake claims, each putative class member still could recover for
20           breach of contract and bad faith *only* by proving his or her individual claim was
         wrongfully denied, in whole or in part, and the insurer's action in doing so was
21           unreasonable. . . . Plaintiffs attempt to distinguish *Basurco* by maintaining that
         recovery for all putative class members in this case can be determined by a formula
22           and that individual investigations will not be necessary once it is shown that State
         Farm . . . denied benefits based on an improper policy, for example, [of] incorrect
23           depreciation reductions. This argument fails to properly characterize the proof
         necessary for each putative class member to recover. . . . [T]he insured can recover
24           only if he or she did not receive benefits to which he was otherwise entitled.

25   *Newell*, 13 Cal. Rptr. 3d at 350–51.

26         The same logic has been used by federal courts all over the country in finding that similar

27   types of claims eclipse predominance and are not appropriate for class treatment:

28

- No predominance in class action challenging the formula insurer used to systematically underpay insureds—review of each insured's claim would be required to determine whether the amount the insurer had paid was "reasonable" as required under their policies. *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 779–80 (8th Cir. 2013).

- No predominance because use of improper method to adjust claims does not prove that contract was breached; insured must still prove his own claim was underpaid. *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 891 (7th Cir. 2011).

- No predominance where adjudication of insurer's defenses to claims that it underpaid water damage claims "would require an individual inquiry into each of the putative class members' claims." *Kraetsch v. United Serv. Auto. Ass'n*, No. 4:14-cv-264-CEJ, 2015 WL 1457015, *5 (E.D. Mo. Mar. 30, 2015).

- No predominance in class action asserting breach of contract, UCL and bad faith claims, where "the nature of [monetary] relief sought is equivalent to a declaration of liability. . . . [and] would determine many of the key procedures used in trying this case" so "individual procedures would be necessary to determine any appropriate restitution." *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 540 (S.D. Cal. 2011).

- No predominance where individualized inquiry was needed to resolve insurer's defenses to claims of breach based on alleged practice of underpaying claims. *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 678–80 (M.D. Fla. 2010).

- No predominance where insurer's defenses to alleged underestimation of the cost to repair insured homes would require individualized review of each class member's claim. *Schafer v. State Farm Fire & Cas. Co.*, No. 06-8262, 2009 WL 2391238, *6 (E.D. La. Aug. 3, 2009).

- No predominance where, even if breach occurred, individualized inquiry was needed to adjudicate insurer's defense that its total claim payment was sufficient to cover individual class members' losses. *Nguyen v. St. Paul Travelers Ins. Co*., No. 06-4130, 2008 WL 4691685, *9 (E.D. La. Oct. 22, 2008).

- No predominance where, even though insurer's procedures for adjusting claims might be common to all claims, "demonstrating a wrongful pattern and practice of failing to adjust claims will require an intensive review of the individual facts of each class members' damage claim, including the nature and extent of damage, timing and adjustment of each class member's claim, how much each class member was paid on his claim and for what damage, and whether that amount was sufficient and timely." *Spiers v. Liberty Mut. Fire Ins. Co.*, No. 06-4493, 2006 WL 4764430, *4 (E.D. La. Nov. 21, 2006).

1

### B. Plaintiff's Own Claim Demonstrates Lack of Predominance

2        Johnson's Dilemma is a textbook example as to why this case cannot be certified for lack of

3    predominance. Plaintiff's Policy unambiguously states that when a policyholder pursues his claim on

4    a replacement cost basis Hartford:

5        [W]ill *not pay more* for physical loss or physical damage . . . than the *least* of:

6        (i)    The cost to replace, on the same premises, the physically lost or physically

7               damaged property with other property of comparable material and quality and
               which is used for the same purpose; or

8        (ii)   The amount *you actually spend* that is necessary to repair or replace the

9               physically lost or physically damaged property.

10   (Frost Decl. at ¶ 14, Ex. 3 (emphasis added)).

11       Under these policy terms, as long as Hartford pays policy benefits equal to the amount it

12   would take to repair or replace the insured's damaged property at the time of the loss with material of

13   like kind and quality, it has not breached its policy and has not caused the insured any legally

14   cognizable harm. That is, of course, Johnson's Dilemma. (Frost Dec. ¶¶ 17, 20, Exs. 1, 8, 9).

15       Here, each and every class member would be required to establish not only that Hartford

16   improperly depreciated certain unlisted structural components and sales tax when calculating ACV,

17   **but also that the depreciation calculation resulted in individualized harm and damages.** By

18   Plaintiff's own estimation, this would be required of at least 19,650 claims. (Doc. 37, pp. 14–15).

19   California courts have specifically recognized that once repair and replacement occur, actual repair

20   costs are the dispositive criteria for assessing whether an insurer has met its obligations under the

21   Policy. *E.g.*, *Lincoln Fountain Villas Homeowners Ass'n v. State Farm Fire & Cas. Ins. Co.*, 39

22   Cal. Rptr. 3d 345, 351 (Cal. Ct. App. 2006) ("*Fountain Villas*"). In *Fountain Villas*, the court held

23   that because the policyholder spent less to repair the insured property than the insurer's ACV

24   payment, the insurer did not breach the policy or owe any further policy benefits. *Id.* at 352. The court

25   also explained that any errors in withholding the contractor's overhead and profit were "mooted"

26   because the policyholder was able to complete the repairs for less than the insurer's ACV payment.

27   *Id.* at 354. Finally, the court agreed with the trial court's observation that "at the end of the day [the

28

insurer] paid more to the [policyholder] than it owed under the insurance contract, not less." *Id*. In other words, without proof of damage, a plaintiff or class member cannot prove breach.

Simply put, there is no plausible way to determine the cost of completed repairs without a highly individualized fact-finding into records relating to the 19,650 claims that Plaintiff contends are at issue. And where, as here, the insured has retained the services of a public adjuster, her records would also need to be examined. Furthermore, assuming, *arguendo*, all pertinent repair records could even be secured through discovery, there may be disputes over the extent to which such repairs covered the same damage identified by the initial Harford estimate: insureds may choose to make changes and improvements to their property while repair work is done, and contractors often do not itemize all repairs in detail. And, as seen in Plaintiff's claim, estimates do not always reflect the insured's actual cost of repairs because the insurance company's cost of repair estimates are just that: *estimates*.

Other considerations which must be examined on a case-by-case basis include whether: (1) the insurer or insured's estimate was the product of negotiation and compromise between the insurer and insured (or his public adjuster); (2) there were alleged miscalculations in calculating the necessary cost of repairs; or (3) there was fraud or other deceitful conduct by the insured (or his public adjuster) in submitting the insurance claim.[5]

## C. Plaintiff's "Method" of Calculating Monetary Relief is Not Sufficient

Plaintiff also contends that "the damages will be easily measured as the amount of depreciation taken on items where no depreciation is allowed. This is a binary question—the damages are either

---

[5] Johnson himself is subject to these additional, sometimes troublesome considerations. *See infra* pp. 19–24. Individual class member's claims may also be impacted by other factors such as whether the claims examiner uses above-market prices or measurements provided by the insured or insured's adjuster, pays for preexisting damage or items not damaged in connection with the covered loss or makes other concessions to the insured to resolve the claim. All of these individual considerations bear directly on the question of whether any insured (including the Plaintiff) has suffered harm as a result of Hartford's alleged conduct. To the extent any of these factors have resulted in the over-estimation or over-payment of an insured's claim, they will have to be addressed in order to determine whether the insured has suffered any actual damage as a result of the alleged depreciation of certain components and sales tax. In short, there will be highly individualized—and likely contentious—determinations of the extent to which the ACV payment covered the entire cost of a particular class member's repairs.

---

1   zero or the amount of depreciation taken which can be shown by Hartford's records." (Doc. 37,

2   p. 20). This is simply not the case. Plaintiff's characterization of damages, while distracting from the

3   individualized nature of the classes' claims, bears no relationship to the class members' actual

4   damages.

5         Where, as here, damages are an express element of each of the purported 19,650 class

6   members' claims, Plaintiff must present some "viable method of demonstrating class-wide injury

7   based on common proof" as a condition precedent to obtaining class status. *In re Graphics*

8   *Processing Units Antitrust Litig.*, 253 F.R.D. 478, 490 (N.D. Cal. 2008). As this Court recently

9   explained is assessing predominance after the Supreme Court's 2013 decision in *Comcast*

10  *Corporation v. Behrend*,

11          a plaintiff must demonstrate that damages are capable of measurement on a classwide

12          basis. The damages methodology must be tied to the plaintiff's theory of liability. In
        other words, Khasin's damages model purporting to serve as evidence of damages in

13          this class action must measure only those damages attributable to Bigelow's
        misleading conduct. If the model does not even attempt to do that, it cannot possibly

14          establish that damages are susceptible of measurement across the entire class for
        purposes of Rule 23(b)(3). At class certification, plaintiff must present a likely method

15          for determining class damages, though it is not necessary to show that his method will
        work with certainty at this time.

16

17  *Khasin*, 2016 WL 1213767 at *3 (internal quotation marks, citations, and alterations omitted).

18        Plaintiff's argument in support of certification rests heavily on Hartford's "database of

19  estimates" that purportedly contains a "listing in detail the policy and claimant information, and the

20  replacement cost, depreciation and [ACV] determined for each component for each claim." (Doc. 37,

21  p. 15). Hartford's corporate representative, Mr. Boyd Beadles, explicitly testified otherwise:

22        Q.    So were the estimates that were used to prepare this the final estimates that
             were used in making the ACV and RCV payments?

23

24        A.    So when an estimate is uploaded to Xactimate, it should be the final estimate.
             But that doesn't necessarily mean—it—there could have been other additions

25               to the estimate, manuscripted into, or there might be, for example, I think in
             Mr. Johnson's case there are asbestos abatement cost and that type of anything.

26               Those aren't captured in this estimate value. They're added to it. So I guess to
             answer your question, this is the amount of—this is the final estimate that was

27

28

- 16 -

1

2

uploaded to Xactimate, but we can't say with 100 percent certainly that this was the amount that was actually paid.

Q.     Generally speaking, if depreciation amount was recovered by an insured through a replacement cost payment, do you know how that would be entered into the system an if it would be broken down by—by trade.

A.     It would not be—it's likely it would not be broken down by trade. And the way that it would be entered into the system is through a file note. And a payment to the customer.

(Frost Decl. at ¶ 34, Ex. 13). Thus, simply relying upon the alleged "database of estimates" does not demonstrate with certainty the amount that was actually paid for ACV. Moreover, it does not establish or in any way validate the specific depreciation amount that was recovered by class members—collectively or individually—through RCV. Of course, this further confirms the need for individual inquiries to determine both the nature and the amount of recoverable depreciation ultimately provided through RCV. This concern has been exacerbated by the new class definition offered for certification, which explicitly excludes insureds that were paid "full" replacement cost. (Doc. 37, p. 3). Plaintiff has not offered any means through which to identify only those class members who have captured-claims from those who would not be captured in the class (*i.e.*, those who were paid "full" replacement cost) without conducting an highly individualized and time-consuming claim-by-claim inquiry.

Plaintiff's unsubstantiated "model" of relying on Hartford's "records" to measure the "amount of deprecation taken on items where no deprecation is allowed" is inherently flawed for the reasons described above. Again, Johnson's Dilemma proves fatal to his class claim. Plaintiff's model completely ignores how he will take into consideration the multitude of individualized factors that (in addition to liability) impact any measure of damages—such as overpayment by the insurer, the fact that the ACV payment covered all repair costs, the insurer or insured's estimate was the product of negotiation and compromise between the insurer and insured (or his public adjuster), and whether there were alleged miscalculations in calculating the necessary cost of repairs. In addition, Plaintiff's damages "model" makes no attempt to account for Mr. Beadles testimony that the "database of

1  estimates" does not demonstrate with certainty the amount that was actually paid for ACV, nor does

2  not establish or validate the specific depreciation amount that was recovered by class members.

3  Plaintiff's "model" also bears no relevance to the alleged violation of California Code of

4  Regulations § 2695.9(f), much less does he propose an actual measurement mechanism for Hartford's

5  alleged failure to properly document depreciation. It is ironic that when presenting the requisite

6  damages model, Plaintiff presumably relies on records that he separately contends fail to properly

7  document depreciation. For all of the foregoing reasons, Plaintiff has not provided a damages model

8  that is tied to his theory of liability.

9  **D.  Other Policy-Related Considerations Establish the Lack of Predominance**

10  The class action device "shall not" be used to alter or abridge the substantive rights of the

11  parties. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). *Amchem Products* does not

12  permit revision of the substantive terms of the policy simply to make class certification more

13  expedient. 521 U.S. at 613.

14  Every class member's policy provided coverage on a replacement cost basis, ultimately

15  providing coverage for the full replacement cost value of any partial loss of structural components of

16  his property. (Frost Dec. ¶¶ 11–14; Ex. 3). Why a class member did not take advantage of the

17  contractual right to *full* replacement cost is an individualized consideration relevant to the merits of a

18  class member's claim. Plaintiff also completely ignores the Policy's Appraisal provision that

19  necessarily involves an individual evaluation of each class member's claim. *See Enger*, 407 F. App'x

20  at 193 (recognizing that plaintiff must first submit to an appraisal because "full compliance with the

21  policy terms is a contractual prerequisite to bringing suit" (internal quotation marks omitted). (Frost

22  Dec. ¶ 15, Ex. 3). Why a class member did not take advantage of such contractual rights and whether

23  he or she was required to do so are other examples of a long line of individual considerations that

24  must be considered before liability is established and preclude certification. Plaintiff's Motion also

25  completely ignores the individual inquiry that must be done to determine the applicability of other

26  policy provisions including whether there has been "full compliance with all terms of the insurance"

27  the two-year limitation on bringing claims and the existence and impact of "other insurance." (Frost

28

- 18 -

Dec. ¶ 15, Ex. 3). Furthermore, given that Plaintiff's own agent testified that he understood the grounds for Hartford's deductions, any question regarding alleged noncompliance California Code of Regulations § 2659.9 also requires further individual inquiry. (Frost Decl. at ¶ 18, 23, Exs. 10, 12).

### E. The Bad Faith Claims are Even More Fact-Intensive and Inappropriate for Class Treatment

Plaintiff's "bad faith" claims are even more uniquely fact-driven than his breach of contract claims.[6] To prove a tortious breach of contract, the plaintiff must establish not only that the insurer failed to pay benefits, but did so unreasonably or without proper cause, "prompted not by honest mistake, bad judgment or negligence, but rather by a conscious and deliberate act." *Chateau Chamberay Homeowners Ass'n v. Associated Ins. Co.*, 108 Cal. Rptr. 2d 776, 783 (Cal. Ct. App. 2001). "Since a claim for [bad faith] is predicated on breach of contract . . . , the Court would also have to conduct for each putative class member an individualized analysis of whether Defendant breached the implied covenant [of good faith and fair dealing]." *Basurco*, 133 Cal. Rptr. 2d at 373. Thus, for purposes of a bad faith analysis, the focus shifts from breach of contract to the reasonableness of the insurer's actions under all of the circumstances existing at the time. In other words, bad faith turns on the validity of the insurer's reasons for its resolution of the particular insurance claim. To determine reasonableness, the court would have to examine not only what the insurer did with respect to each claim, but why. This would require reevaluation of all aspects of each of the 19,650 claims purportedly at issue, focusing in each case on whether Hartford acted—not through bad judgment—but by conscious deliberation.

### V.   OTHER CLASS CERTIFICATION ISSUES

Similar to this Court's decision in *Khasin,* the class certification inquiry can begin—and end—with the predominance inquiry under Rule 23(b)(3). But Plaintiff also has not satisfied his burden to show by a preponderance of the evidence that the other prerequisites under Rule 23(a) and (b) have been satisfied.

---

[6] Breach of contract is prerequisite to an insurance bad faith claim. Therefore, plaintiffs' bad faith cause of action would require the same individual factual determinations described above.

1

**A.  A Class Action Is Not Superior Here**

2          Superiority is also lacking here. In deciding whether a class action is superior to individual

3   claims, federal courts generally consider four factors: (1) the interest of each member in controlling

4   his or her own case personally; (2) the extent and nature of any litigation concerning the controversy

5   already begun by class members; (3) the desirability of consolidating all claims in a single action

6   before a single court; and (4) the likely difficulties in managing a class action. *Amchem Products*, 521

7   U.S. at 616.

8          Class certification is not a superior means of resolving this lawsuit. In addition to the fact that

9   individual inquiries are required to determine whether each insured suffers from Johnson's Dilemma,

10  Hartford is entitled to contest the actual amount of the repair cost. *E.g.*, *Brown v. Fed. Express Corp.*,

11  249 F.R.D. 580, 587–88 (C.D. Cal. 2008) (where plaintiff provides no viable method of common

12  proof of liability or damages, the result is "thousands" of mini-trials across the class, making class

13  treatment unmanageable). Specifically with respect to alleged underpayment of property losses, "a

14  class action would be extremely difficult to manage because individual issues predominate over

15  common questions of law and fact," and the "complexity of the issues . . . makes it impractical and

16  thus undesirable to consolidate" all cases into one proceeding. *Basurco*, 133 Cal. Rptr. 3d at 375. The

17  fact Plaintiff also seeks to have this Court separately analyze and evaluate more than forty separate

18  structural components—ranging from wiring to stucco—that could probably be involved in any of the

19  19,000+ claims at issue, further adds to the wholly unmanageable nature of the class.

20         Plaintiff has also not established superiority because, generally speaking, the higher the

21  damages claims, the stronger an interest each class member has in controlling his or her own case

22  under the first factor. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1278 (11th Cir. 2009) (large

23  individual recoveries are not negative-value suits justifying class treatment); *Achziger v. IDS Prop.*

24  *Cas. Ins. Co.,* No. C14-5445 BHS, 2016 WL 1276048, *5 (W.D. Wash. Apr. 1, 2016) (superiority

25  was not satisfied where insureds may have "significant claims [that will have] diminished value" if

26  treated as a class), *appeal docketed*, No. 16-80051 (9th Cir. Apr. 18, 2016); *Newell*, 13 Cal. Rptr. 3d

27

28

- 20 -

1    at 351 ("Putative class members, seeking compensation for damage caused to their homes, have a

2    strong interest in controlling their own case[.]").

3         According to the Complaint, Plaintiff's compensatory damages purportedly exceed $30,000.

4    (Doc. 1-1 ¶ 13). He also seeks an unspecified amount in punitive damages and attorneys' fees.

5    (Doc. 1-1, Prayer ¶¶ j, k). Plaintiff, who alleges that his claim is "typical" of every other putative class

6    member's claim, provides no explanation as to why, given such sizeable damage claims, each class

7    member would not prefer to pursue and control their own individual suit. California law affords

8    individual insureds a host of generous remedies against insurers who fail to timely pay policy

9    benefits, including contractual and tort claims on which insureds may recover damages for benefits

10   owed, emotional distress, attorneys' fees, punitive damages, and interest. Thus, individual insureds

11   have every incentive and ability to pursue the legal remedies available to them if they have not been

12   fully compensated for their losses. Plus, insureds "seeking compensation for damage caused to their

13   homes[] have a strong interest in controlling their own case." *Newell*, 13 Cal. Rptr. 3d at 351. A class

14   action is therefore not the superior means for adjudicating this case.

15        **B.   Plaintiff Is Not Typical of the Class He Seeks to Represent**

16        Typicality requires the Court to determine "whether the named plaintiffs' individual

17   circumstances markedly diverge or whether the legal theories and claims differ as to defeat the

18   purposes of maintaining a class." *Van Colin v. County of Ventura,* 189 F.R.D. 583, 591 (C.D. Cal.

19   1999). This includes "whether other members [of the class] have the same or similar injury" as the

20   named plaintiff. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992); *Doyle v. Chrysler*

21   *Group, LLC*, 663 F. App'x 576, 580 (9th Cir. 2016) (typicality and adequacy requirements not

22   satisfied where class included individuals who did not pay for allegedly faulty regulators and

23   "therefore have no expenses that could be reimbursed"). A plaintiff cannot establish typicality where

24   "unique defenses exist that threaten to divert the focus of the litigation to the detriment of the class as

25   a whole." *Banarji v. Wishire Consumer Capital, LLC*, No. 14-cv-2967-BEN, 2016 WL 595323, *3

26   (S.D. Cal. Feb. 12, 2016) (typicality not satisfied because the class as a whole "may suffer as Plaintiff

27   will be engrossed with disputing [defendant's] arguments regarding Plaintiff's individual case.");

28

1   *Elite Logistics Corp. v. MOL America Inc.*, No. 11-2952-DDP, 2016 WL 409650, *4 (C.D. Cal. Dec.

2   2, 2016) (plaintiff was atypical where unclean hands defense "would prove a distraction").

3           Johnson's Dilemma again demonstrates why he is far from "typical" of the class he seeks to

4   represent. (Frost Dec. ¶¶ 21–22, Ex. 11). Typicality is also not satisfied because Plaintiff will be

5   subject to "unique defenses" that will place the focus of the case directly on him to the detriment of

6   the class. *Banarji*, 2016 WL 595323, at *3. In particular, through its examination of Plaintiff's

7   individual claim (that Hartford will need to conduct on a claim-by-claim basis for every class

8   member), Hartford learned that Plaintiff collected over $90,000 (made in three payments of $4,700,

9   $76,500, and $10,000) from Hartford to cover costs allegedly associated with cleaning and repairing

10  "slides and tapes" that contained his artwork. (Frost Dec. ¶ 25, Ex. 11). He then later conceded in his

11  deposition that he never paid a third-party for the repairs. (Frost Dec. ¶ 25, Ex. 11).

12          Hartford also uncovered that the Plaintiff and his public adjuster may have colluded to distort

13  his claim for lost rental income. For instance, when discussing the issue with his public adjuster,

14  Plaintiff was told that "if [he] starts the lease early, then the insurance company will take the position

15  that your loss of rents for the extended period was not incurred." (Frost Dec. ¶ 26, Ex. 11).The public

16  adjuster then went on to suggest: "I think these types of things should be discussed orally versus in

17  *discoverable* e-mails." (Frost Dec. ¶ 26, Ex. 11 (emphasis added)). In another email regarding the rent

18  issue, Plaintiff told his public adjuster "you tell us what they will accept, and we will craft the leases

19  accordingly." (Frost Dec. ¶ 27, Ex. 11). Plaintiff confirmed in his deposition the "they" he was

20  referring to was Hartford. (Frost Dec. ¶ 27, Ex. 11). He further testified:

21      Q.    You—you say you made every effort to try and comply with the requirements.

22            Is—is not what you and Masood Kahn were doing was trying to manipulate the
23            lease date so that you could trigger coverage.

24      A.    Well, yeah, exactly. That's what we were trying to do. We—we needed to get
              that money, and we were entitled to it because it was free rent. They were
25            going to be there, and they weren't paying rent.

26  (Frost Dec. ¶ 28, Ex. 11).Hartford has also learned during discovery that additional amounts Plaintiff

27  received for code upgrades may have been duplicative of earlier claims. (Frost Dec. ¶ 29, Ex. 11).

28
                                              - 22 -

1
2
3

Surely, Plaintiff can vigorously contest these unique defenses. But for class certification purposes, the mere fact that such atypical questions exist is enough to detrimentally shift the focus of his prosecution away from the absent class member's claims.[7]

4

### C. Plaintiff Cannot Adequately Represent the Class

5
6
7
8
9
10
11
12
13

Adequacy turns in part on whether the named plaintiff has "any conflicts of interest with other class members[.]" *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998). With respect to whether a plaintiff is inadequate to serve as a representative for the class, "credibility may be a relevant consideration" because "an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims." *Harris v. Vector Mktg. Corp,* 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (internal quotation mark omitted). A plaintiff may be deemed inadequate to serve as a class representative when his credibility is "seriously 'questioned on issues directly relevant to the litigation . . . .'" *O'Connor v. Uber Techs. Inc.*, No. C-13-3826 EMC, 2015 WL 5138097, *11 (N.D. Cal. Sept. 1, 2015) (citing *Harris*, 753 F. Supp. 2d at 1015).

14
15
16
17
18
19
20
21
22
23
24

A plaintiff who has not proven a willingness to prosecute the case "vigorously" on behalf of the unnamed class members is also inadequate. *Hanlon*, 150 F.3d at 1020 (finding that due process concerns illuminated by *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940) require "vigorous" prosecution on behalf of the class). While the "threshold of knowledge required to qualify as a class representative is low[,]" the plaintiff is inadequate where he "knows nothing about the case and defers control over the action to counsel." *Lee v. Pep Boys-Manny Moe & Jack of Cal.,* No. 12-cv-05064-JSC, 2015 WL 9480475, *10 (N.D. Cal. Dec. 23, 2015) (internal quotation marks omitted) (plaintiff found to be inadequate where, *inter alia*, he had never read the complaint, was only able to describe the nature of his claims "in the most general of terms" and "appears to have deferred control over this litigation to his attorneys"); *In re Facebook, Inc. PPC Advert. Litig.,* 282 F.R.D. 446, 454 (N.D. Cal. 2012) ("[Plaintiff] is also not an adequate class representative for the additional reason that he testified in

25
26
27
28

---

[7] Plaintiff's policy specifically provides that it does not provide coverage to an insured who commits fraud or "intentionally concealed or misrepresented any material fact or circumstance . . . ." (Frost Dec. ¶ 24, Ex. 3).

HARTFORD CASUALTY INSURANCE COMPANY'S
BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 3:15-CV-04138-WHO

his deposition that he knows essentially nothing about the case, and indicated that he would defer to counsel in prosecuting this action.").

Johnson's Dilemma shows yet again why he is also not an adequate representative for his putative class. Indeed, his representation is compromised because he cannot provide any evidence showing his claim was underpaid by Hartford. But his questionable conduct exhibited during the claims process is even more problematic: it may lead to credibility questions, and will also distract his prosecution away from unnamed class members and onto himself and his claim's own, unique obstacles. His inadequacy is yet further confirmed by his lack of understanding of his own lawsuit. For instance, before his deposition, Plaintiff had never seen a copy of the Complaint. (Frost Dec. ¶ 30, Ex. 11). He had no knowledge of and had never even seen the statutory provision that is at the center of this controversy. (Frost Dec. ¶ 31, Ex. 11). Similarly, Plaintiff's deposition testimony reveals he possesses neither the interest, nor the ability, to control this litigation: Plaintiff has testified not only that he did not understand the factual or legal basis for his claims, but that he has ceded all responsibility for directing the lawsuit to his attorneys. (Frost Dec. ¶¶ 32–33, Ex. 11).In doing so he has violated the fundamental admonition that "[p]laintiffs should understand the actions in which they are involved, and that understanding should not be limited to derivative knowledge acquired solely from counsel." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 483 n.18 (5th Cir. 2001). He is not adequate to serve as class representative.

## CONCLUSION

Those issues that might be common to the insureds Plaintiff has named in his Complaint and Motion for Class Certification do not predominate over the class. A class action is not the superior mechanism to adjudicate any claims of the putative class members. And in any event, Johnson is a poor choice for class representative: his claim is atypical of the defined class, and he cannot adequately represent the class's interests. The Plaintiff's Motion for Class Certification is due to be denied.

1    Dated: March 3, 2017                    MAYNARD, COOPER & GALE, P.C.

2

3                                           By: */s/ Christopher C. Frost*
                                                Michael D. Mulvaney
4                                               Christopher C. Frost
                                                Linda B. Oliver
5                                           *Attorneys for Defendant Hartford Casualty*
                                            *Insurance Company*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HARTFORD CASUALTY INSURANCE COMPANY'S
BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 3:15-CV-04138-WHO

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Brief in Opposition to Plaintiff's Motion for Class Certification the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following counsel of record:

Michael von Loewenfeldt
Daniel Jack Veroff
Ivo Labar
Jennifer Freeland
KERR & WAGSTAFFE LLP
101 Mission Street, 18th Floor
San Francisco, CA 94015-1727

On this the 3rd day of March, 2017.

_s/ Christopher Charles Frost_____
Christopher Charles Frost