1  MICHAEL VON LOEWENFELDT (178665)
   IVO LABAR (203492)
2  DANIEL J. VEROFF (291492)
   **KERR & WAGSTAFFE LLP**
3  101 Mission Street, 18th Floor
   San Francisco, CA 94105–1727
4  Telephone: (415) 371-8500
   Fax: (415) 371-0500
5  Email: mvl@kerrwagstaffe.com
   Email: labar@kerrwagstaffe.com
6  Email: veroff@kerrwagstaffe.com

7  Attorneys for Plaintiff
   G. GRANT JOHNSON
8

9

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12                **SAN FRANCISCO DIVISION**

13

14  G. GRANT JOHNSON, an individual, on behalf        Case No. 3:15-cv-04138-WHO
    of himself and a class of similarly situated
15  persons,
                                                       **CLASS ACTION SETTLEMENT
16              Plaintiff,                              AGREEMENT AND RELEASE**

17          v.

18
                                                       DATE: April 11, 2018
19  HARTFORD CASUALTY INSURANCE                        TIME:  2:00 PM
    COMPANY, an Indiana corporation; and DOES          DEPT:  Courtroom 2, 17th Floor
20  1-25,

21              Defendants.                            TRIAL: TBD

22

23

24

25

26

27

28

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release (the "Agreement") is entered into between the Settlement Class Representative, as defined in Paragraph I.23 below, on behalf of himself and all others similarly situated, on the one hand, and "Hartford" as defined in Paragraph I.7 below, on the other hand.

WHEREAS, the Civil Action (as defined in Paragraph I.1 below) has been removed to the United States District Court for the Northern District of California alleging, inter alia, that Hartford failed to pay the correct amount of "actual cash value" on certain claims for property damage under homeowners' and commercial property insurance policies in California by 1) applying depreciation to certain components that the Settlement Class Representative contends cannot be depreciated under California law because they are not normally subject to repair or replacement during the useful life of the structure, and 2) calculating the amount of sales tax included in an actual cash value payment based on the actual cash value of the building materials rather than the full replacement cost value of the building materials;

WHEREAS, Hartford asserts a number of legal and factual defenses to the claims made in the Civil Action and denies any liability whatsoever;

WHEREAS, the Settlement Class Representative and Settlement Class Counsel (as defined in Paragraph I.20 below) have concluded, after discovery and investigation of the facts and after carefully considering the circumstances of the Civil Action, including the claims asserted in the Complaint (as defined in Paragraph I.4 below), the status of the Civil Action and the possible legal, factual and procedural defenses thereto, that it would be in the best interests of the Settlement Class to enter into this Agreement, which interests include the substantial value to be derived by this settlement and the interest in avoiding the uncertainties of litigation and assuring that the benefits reflected herein are obtained for the Settlement Class; and, further, that Settlement Class Counsel consider the settlement set forth herein to be fair, reasonable and adequate and in the best interests of the Settlement Class;

WHEREAS, Hartford, after vigorous, arms-length negotiations, has conditionally agreed to payment of certain sums in settlement for the benefit of the Settlement Class, as provided in this Agreement;

WHEREAS, Hartford, despite its belief that it has valid and complete defenses to the claims asserted against it in the Civil Action, has nevertheless agreed to enter into this Agreement to reduce and avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and thereby to resolve this controversy.

NOW, THEREFORE, it is agreed by and between the undersigned on behalf of Hartford and the Settlement Class Representative that any and all claims made or that could have been made against Hartford by the Settlement Class and/or the Settlement Class Representative in the Civil Action be settled, compromised and dismissed on the merits and with prejudice and, except as hereafter provided, without costs as to the Settlement Class, Settlement Class Representative, or Hartford, subject to the approval of the Settlement Court, on the following terms and conditions.

## I.    DEFINITIONS

1.      The term "Civil Action" means the action captioned *G. Grant Johnson v. Hartford Casualty Ins. Co.*, originally filed on August 13, 2015 in the Superior Court for the State of California, City and County of San Francisco, and assigned Case No. CGC-15-547372, and subsequently removed to the United States District Court for the Northern District of California on September 11, 2015, and assigned Case No. 3:15-cv-04138-WHO.

2.      The term "Claim Form" means the document, which will be appended to the Settlement Notice, that Class Members must complete, sign, and timely submit pursuant to Paragraph II.5.d of this Agreement in order to receive an Individual Payment.  A copy of the Claim Form is attached hereto with the proposed Settlement Notice, which is Exhibit A hereto.

3.      The term "Class" or "Class Members" means all policyholders (including both natural persons and entities) insured by an insurance policy underwritten by Hartford that insured one or more structures located in California who suffered a partial loss to a covered structure in California between August 13, 2011 and the date of the entry of the Preliminary Approval Order (as defined in Paragraph I.14 below), and made an insurance claim with Hartford seeking coverage for that loss, excluding persons and entities that, as of the date of the Preliminary Approval Order: (a) were paid the limits of the policy's coverage for structural loss; (b) were paid full replacement cost for structural loss without deduction for depreciation; (c) whose actual cash value payment for the loss has not yet been made by Hartford; (d) whose claims were the subject of a pending individual lawsuit, other than the Civil Action; (e) whose claims were the subject of a release executed by the policyholder in favor of Hartford; and/or (f) whose claims were the subject of an ongoing or completed appraisal proceeding under the terms of an appraisal provision in an insurance policy issued by Hartford. In the event that a person or entity has made more than one insurance claim with Hartford for a partial loss to a covered structure during the Settlement Class Period, and one or more of those claims fall within exclusions (a) through (f) above but one or more other claims are not excluded, that person or entity will be a Class Member only with respect to those insurance claims that do not fall within exclusions (a) through (f) above.

The term "partial loss" refers to any loss other than a total loss of a structure that was adjusted based on the fair market value of the structure or payment of the applicable policy limit. The term "covered structure" refers to any dwelling or building of any type for which coverage was provided under an insurance policy issued by Hartford. The term "structural loss" refers to any loss to a "covered structure." The term "full replacement cost" refers to the amount estimated by Hartford to constitute the replacement cost value of the structural loss to the extent covered by the policy, without deduction for depreciation, minus the applicable deductible.

4.      The term "Complaint" means the Class Action Complaint filed on August 13, 2015 in the Civil Action and any subsequent amended versions thereof.

5.      The term "Component Subclass" means all members of the Class whose actual cash value payment was reduced by depreciation to one or more of the following structural components and who did not fully recover all depreciation in a subsequent claim for replacement

class value:  acoustical ceilings, baseboards, basement floor systems, bath cabinets, brick, ceilings and ceiling suspension, ceramic tile, cement, cement posts, chimneys, closet doors, closet shelves, concrete footings, concrete foundations, custom millwork, drywall, electrical wiring and insulation, engineered wood, exterior siding, fiber cement, fiberglass doors, fireplaces, floor trusses, framing, insulation, laminated strand lumber, lath, mantles, marble, natural stone, natural wood flooring, ornamental iron, plaster, plumbing, poured concrete structural systems, roof trusses, rough carpentry, rough structure, slate flagstone floors, stone, stucco, terrazzo, timber frames, toilets, trim, two-by-four studs, walls, wall panels, wood doors, and wood shutters.

6.      The term "Effective Date" has the meaning ascribed to it in Paragraph II.11 of this Agreement.

7.      The term "Hartford" means, collectively Hartford Casualty Insurance Company, Hartford Accident and Indemnity Company, Hartford Fire Insurance Company, Hartford Insurance Company of the Midwest, Hartford Life Insurance Company, Hartford Underwriters Insurance Company, Property & Casualty Insurance Company of Hartford, Sentinel Insurance Company, Ltd., Trumbull Insurance Company, and Twin City Fire Insurance Company.

8.      The term "Hartford Counsel" means Michael D. Mulvaney, Esq., Christopher C. Frost, Esq., Linda B. Oliver, Esq., Maynard, Cooper and Gale, LLP, Wystan M. Ackerman, Esq, and Robinson & Cole LLP.

9.      The term "Individual Payment" means the amount payable to a particular Class Member determined using the methodology set forth in Paragraph II.6. of this Agreement with respect to each Class Member.

10.      The term "Motion for Preliminary Approval" means the pleading to be filed by the Settlement Class Representative pursuant to Paragraph II.3 of this Agreement, which pleading shall be mutually acceptable to, and may not be modified without the mutual consent of, each of the Parties in their sole and absolute discretion.  This Agreement shall be filed with the Motion for Preliminary Approval.

11.      The term "Neutral Evaluator" means Peter S. Evans of Mill Valley, California, or any substitute neutral evaluator appointed by the Court, solely for the purpose of arbitrating disputes in accordance with Paragraph II.8.d. below.

12.      The term "Order and Final Judgment" means an order of the Settlement Court granting final approval of the Settlement and the corresponding final judgment.

13.      The term "Party" or "Parties" means the Settlement Class Representative, acting on behalf of the Settlement Class, and Hartford.

14.      The term "Preliminary Approval Order" means an order issued by the Settlement Court preliminarily approving the settlement provided for in this Agreement, in accordance with Fed. R. Civ. P. 23(e).

15. The term "Released Claims" means any and all known and Unknown Claims, rights, demands, actions, causes of action, allegations, or suits of whatever kind or nature, whether *ex contractu* or *ex delicto*, statutory, common law, equitable, including but not limited to breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq., violation of any California Insurance Code provision, violation of any California insurance regulation, any extracontractual claims, any claims for punitive or exemplary damages, restitution, disgorgement, return or refund of premium, attorneys' fees, costs of suit, declaratory relief, injunctive relief, specific performance, reformation, or prejudgment or postjudgment interest, arising from or relating in any way to the application of depreciation on the "Structural Coverage" portion of any property insurance claim made by any Settlement Class Member to Hartford during the Settlement Class Period, to the fullest extent permitted by the law of claim preclusion and res judicata protections.  The term "Structural Coverage" refers to insurance coverage provided for any dwelling or building of any type. Released Claims do not include any claim for enforcement of this Settlement Agreement and/or Order and Final Judgment. Released Claims also specifically exclude any supplemental claim by a Settlement Class Member for recovery of any amount held back by Hartford for depreciation, where such supplemental claim is based upon evidence of the timely completion of repair or replacement of the damaged property, in accordance with the terms of the applicable insurance policy and applicable law, and subject to all applicable limits of insurance and sublimits. In evaluating any such supplemental claim, Hartford shall be entitled to subtract any Individual Payment issued or due under this Agreement in calculating the amount of depreciation holdback to be paid. Nothing in this Agreement shall be construed as: (a) extending the time period under any insurance policy and applicable law for a Settlement Class Member to submit a supplemental claim for depreciation holdback based upon evidence of completion of repair or replacement of the damaged property; or (b) requiring Hartford to pay any amount for depreciation holdback other than as provided for under the applicable insurance policy, or as an Individual Payment under this Agreement.

With respect to the Settlement Class Representative only, Released Claims also include all claims of any nature arising from or relating to the property insurance claim made by the Settlement Class Representative that is the subject of the Civil Action, and any claims that he asserted or could have asserted in the Civil Action, to the fullest extent permitted by the law of claim preclusion and res judicata protections.

16. The term "Releasors" means any and all Settlement Class Members, as well as their respective present and former heirs, executors, trustees, administrators, assigns, subrogees, agents, attorneys and any of their legal representatives, and any entities or persons on whose behalf the Settlement Class Member is or was authorized to act, and all past and present officers, directors, agents, attorneys, employees, stockholders, successors, assigns, insurers, reinsurers, independent contractors, and legal representatives of any such persons or entities, but only to the extent such other persons or entities listed in this paragraph are acting, or purporting to act, on behalf of, or in the shoes of, a Settlement Class Member.

17. "Releasees" or "Released Entities" means (a) Hartford (as defined in Paragraph I.7 above); (b) all of the past and present divisions, parent entities, affiliates, and subsidiaries of Hartford; (c) all past and present officers, directors, agents, attorneys, employees, stockholders, successors, assigns, insurers, reinsurers, independent contractors, and legal representatives of the

4

entities and/or Persons listed in Subparagraphs (a)-(b); and (d) all of the heirs, estates, successors, assigns, and legal representatives of any of the entities or persons listed in this Paragraph.

18.     The term "Settlement Administrator" means Rust Consulting, Inc.

19.     The term "Settlement Class" or "Settlement Class Member" means all Class Members other than Settlement Class Opt-Outs. The Settlement Class includes the Settlement Class Representative.

20.     The term "Settlement Class Counsel" means Michael von Loewenfeldt, Esq, Ivo Labor, Esq., Daniel J. Veroff, Esq. and Kerr & Wagstaffe LLP.

21.     The term "Settlement Class Opt-Out" means any person or entity falling within the definition of the Class set forth in Paragraph I.3 above who timely and validly submits a request for exclusion from the Settlement Class in accordance with the procedures set forth in Paragraph II.5.f. and the Settlement Notice.

22.     The term "Settlement Class Period" means August 13, 2011 through the date of the Preliminary Approval Order.

23.     The term "Settlement Class Representative" means G. Grant Johnson and/or any substitute or additional class representative later named in the lawsuit with approval of the Court.

24.     The term "Settlement Court" or "Court" means the United States District Court for the Northern District of California.

25.     The term "Settlement Notice" means the notice to be provided by the Settlement Administrator to the Class pursuant to Federal Rule of Civil Procedure 23(e)(1). The parties' proposed Notice is attached as Exhibit A hereto.

26.     The term "Unknown Claims" means any claim and its related relief and/or damages arising out of newly discovered facts and/or facts found hereafter to be other than or different from the facts now believed to be true.

## II.     **IMPLEMENTATION OF SETTLEMENT**

1.     <u>Reasonable Best Efforts to Effectuate This Settlement</u>. Consistent with the terms of this Agreement and notwithstanding the rights of the Parties to terminate this Agreement at certain times, the Parties and their counsel agree to use their reasonable best efforts, including all steps and efforts contemplated by this Agreement and any other reasonable steps and efforts that may be necessary or appropriate, by order of the Settlement Court or otherwise, to carry out the terms of this Agreement.

2.     <u>Amended Complaint</u>. The Settlement Class Representative shall file, with Hartford Casualty Insurance Company's consent, the Amended Complaint attached hereto as Exhibit B adding as defendants all affiliates of Hartford Casualty Insurance Company that issued

insurance policies in California during the Settlement Class Period providing property insurance coverage and who handled at least one claim within the class.

        3.    <u>Motion for Preliminary Approval</u>.  Following the execution of this Agreement, Settlement Class Counsel shall promptly file the Motion for Preliminary Approval, seeking entry of the Preliminary Approval Order.

        4.    <u>Class Action Fairness Act Notice</u>. Within 10 days after the filing of the Motion for Preliminary Approval, the Settlement Administrator shall give notice to the Attorney General of the United States, the California Insurance Commissioner, and the primary insurance regulatory or supervisory official of each state and territory of the United States in which, based on a preliminary list prepared by Hartford, a potential Class Member resides, serving on them the documents described in 28 U.S.C. § 1715(b)(1) through (8), as applicable.

        5.    <u>Notice, Claim Forms, Opt-Outs and Objections</u>.

        a.    <u>Notice to Class</u>.  In the event the Settlement Court enters the Preliminary Approval Order, the Settlement Administrator shall, in accordance with Fed. R. Civ. P. 23(e) and the Preliminary Approval Order, provide each Class Member who can be identified by reasonable means with a copy of the Settlement Notice, substantially in the form annexed hereto as Exhibit A. Within 14 days of entry of the Preliminary Approval Order, Hartford shall prepare a list of the names and last known addresses of potential Class Members. All costs of notice to the Class and fees of the Settlement Administrator shall be paid by Hartford.

        b.    <u>Mailing of Notice</u>.  Within 30 days of entry of the Preliminary Approval Order, the Settlement Administrator shall send the Settlement Notice to the Class Members by first-class, postage prepaid U.S. mail addressed to each Class Member's last known address. The envelope in which the Settlement Notice is mailed shall be marked "IMPORTANT LEGAL NOTICE REGARDING CLASS ACTION SETTLEMENT" in bold face and all capital letters. If the mailing to a Class Member is returned undeliverable, the Settlement Administrator will make reasonable efforts to identify a new address for that Class Member and promptly re-send the Settlement Notice to that Class Member. Only one re-mailing shall be required, if a new address can be located. If a re-mailing is returned undeliverable, the Settlement Administrator will not make further attempts.

        c.    <u>Website</u>.  The Settlement Administrator shall maintain a website, beginning on or before the date on which the Settlement Notice is mailed and through the date of the final disposition of all Individual Payments, that includes copies of the Amended Complaint, this Agreement, the Settlement Notice, a copy of the Claim Form, the Motion for Preliminary Approval, the Preliminary Approval Order, any motions filed seeking attorneys' fees for Settlement Class Counsel and/or an enhancement award for the Settlement Class Representative, the Motion for Final Approval, and (after it is entered by the Court) the Order and Final Judgment. The settlement website will also include Spanish translations of the Settlement Notice and Claim Form.

        d.    <u>Claim Form</u>.  In order to participate in the Settlement Class, a Class Member must timely submit to the Settlement Administrator via U.S. mail a Claim Form with

respect to each claim for which he/she/it is seeking to recover an Individual Payment, confirming under penalty of perjury that to the best of his/her/its knowledge there was depreciation taken on the claim that was not later paid. Any such Claim Form, in order to be timely, must be postmarked by the deadline set forth in the Settlement Notice, which shall be at least 60 days from the date of first mailing of the Settlement Notice. The Claim Form is attached to the Settlement Notice. Claim Forms must be submitted individually, by a Class Member, not as or on behalf of a group, class, or subclass, except that a Claim Form may be submitted by a Class Member's legal representative. All Class Members who do not submit a timely Claim Form and do not opt-out of the Settlement will be included in the Settlement Class and shall be bound by this Agreement, and their claims shall be released as provided for herein. Within 14 days after the deadline for submission of Claim Forms, the Settlement Administrator shall determine whether any Claim Forms are illegible or otherwise invalid because they fail to contain a signature or other information necessary to identify the claim. If the Settlement Administrator finds that a Claim Form is invalid, it shall notify the Class Member by mail within 5 days, who will have 14 days from when the letter from the Settlement Administrator is postmarked to resubmit a valid Claim Form. The Settlement Administrator's determination as to the validity of Claim Forms under this paragraph shall be final, without any right of appeal.

      e.    <u>Mailing of Postcard Reminder</u>. Thirty (30) days prior to the deadline for Claim Forms, the Settlement Administrator shall mail each Class Member a postcard in the form attached as Exhibit C hereto, reminding the Class Member of the deadline for timely submitting a Claim Form.

      f.    <u>Opt-Outs</u>. A Class Member may opt out of the Settlement by submitting an opt-out request as instructed in the Settlement Notice. Any such opt-out request, in order to be timely, must be mailed to the Settlement Administrator and postmarked by the deadline set forth in the Settlement Notice, which shall be at least 60 days from the date of first mailing of the Settlement Notice. Requests for exclusion must be exercised individually by a Class Member, not as or on behalf of a group, class, or subclass, except that such exclusion requests may be submitted by a Class Member's legal representative. A list of Class Members submitting a timely request for exclusion shall be submitted to the Court with the Motion for Final Approval. All Class Members who do not timely and properly exclude themselves from the Class shall be bound by this Agreement, and their claims shall be released as provided for herein. A Class Member is not entitled to submit both an opt-out request and a Claim Form. If a Class Member submits both an opt-out request and a Claim Form, the Settlement Administrator will send a letter explaining that they may not make both of these requests, and asking the Class Member to make a final decision as to whether to opt out or submit a Claim Form and inform the Settlement Administrator of that decision within 10 days. If the Class Member does not respond to that communication within 14 days after it is mailed (or by the Opt-Out deadline, whichever is later), the Class Member will be treated as having opted out of the Class.

      g.    <u>Objections</u>. Any Class Member may, as instructed in the Settlement Notice, mail an objection to the settlement to the Clerk of Court as instructed in the Settlement Notice, or may file a motion to intervene. All written objections and supporting papers must: (1) clearly identify the case name and number (Johnson v. Hartford Casualty Ins. Co., Case No. 3:15-cv-4138-WHO), (2) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, San Francisco

Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, or by filing them in person at any location of the United States District Court for the Northern District of California, and (3) be filed or postmarked on or before the deadline set forth in the Settlement Notice, which shall be at least 60 days from the date of first mailing of the Settlement Notice. Any Class Member who has timely filed an objection in compliance with this paragraph may appear at the final approval hearing to be scheduled by the Court, in person or by counsel, and be heard to the extent allowed by the Court, applying applicable law, in opposition to the fairness, reasonableness, and adequacy of the proposed settlement, and on the applications for awards of attorneys' fees and costs and incentive award. The right to object to the proposed settlement or to intervene in the Civil Action must be exercised individually by a Class Member or his or her attorney, and not as a member of a group, class, or subclass, except that an objection or a motion to intervene may be submitted by a Class Member's legally authorized representative.

Class Members who file objections are still entitled to receive benefits under the Settlement if it is approved, but they must submit a timely Claim Form to do so. Submitting a timely Claim Form does not waive an objection to the Settlement.

Class Members have the right to exclude themselves from the proposed settlement and pursue a separate and independent remedy by submitting an opt-out request as described in Paragraph II.5.f. above.  Class Members who object to the proposed settlement shall remain Class Members, and have voluntarily waived their right to pursue an independent remedy.  To the extent any Class Member objects to the Proposed Settlement, and such objection is overruled in whole or in part, such Class Member will be forever bound by the Order and Final Judgment of the Court.  Class Members can avoid being bound by any judgment of the Court by opting out as described in Paragraph II.5.f. above. A Class Member is not entitled to submit both an opt-out request and an objection. If a Class Member submits both an opt-out request and an objection, the Settlement Administrator will send a letter explaining that they may not make both of these requests, and asking the Class Member to make a final decision as to whether to opt out or object and inform the Settlement Administrator of that decision within 10 days. If the Class Member does not respond to that communication within 14 days after it was mailed (or by the Objection deadline, whichever is later), the Class Member will be treated as having opted out of the Class, and the objection will not be considered, subject to the Court's discretion.

      6.   <u>Individual Payments</u>. The amount to be paid to each Settlement Class Member who submits a valid Claim Form by the deadline under the terms of this Agreement is as follows:

Settlement Class Members whose total structural indemnity payment was equal to or less than $20,000 will receive a lump sum as follows if the Settlement Class Member submits a valid Claim Form by the deadline:

| Total Structural Indemnity Payment | Lump Sum Settlement Payment |
|---|---|
| $0.01 - $1,000 | $30 |
| $1,000.01 - $5,000 | $60 |
| $5,000.01 - $10,000 | $110 |
| $10,000.01 - $20,000 | $220 |

For Settlement Class Members who submit a valid Claim Form by the deadline and whose total structural indemnity payment was more than $20,000, Hartford will conduct an individual file review of these Settlement Class Members' claims files.  These Settlement Class Members will receive payments calculated as follows:

(a) Class Members who are members of the Component Subclass whose total structural indemnity payment was between $20,000.01 and $100,000 shall receive 20% of the total amount of depreciation held back by Hartford on the structural portion of the claim as of the date of the file review. For example, if Hartford estimated the replacement cost value on the structural portion of a claim at $25,000, initially withheld $10,000 for depreciation on the structural portion of the claim, and later paid $5,000 of the previously-withheld structural depreciation after partial repairs were completed, the Individual Payment on that claim would be $1,000, calculated as $10,000 - $5,000 = $5,000 multiplied by 20% = $1,000.

(b) Class Members who are members of the Component Subclass whose total structural indemnity payment was over $100,000 shall receive 40% of the total amount of depreciation held back by Hartford on the structural portion of the claim as of the date of the file review. For example, if Hartford estimated that the replacement cost value on the structural portion of the claim was $150,000, initially withheld $50,000 for depreciation on the structural portion of the claim, and later paid $40,000 of the previously-withheld structural depreciation after partial repairs were completed, the Individual Payment would be $4,000, calculated as $50,000 - $40,000 = $10,000 multiplied by 40% = $4,000. Payouts to members of the Component Subclass whose total indemnity payment was over $100,000 (the "Large Component Subclass Claims") shall be capped at an aggregate total of $1,000,000. If the aggregate value of valid Large Component Subclass Claims exceeds $1,000,000, each Individual Payment for a Large Component Subclass Claim shall be reduced proportionally. For example, if the total aggregate value of valid Large Component Subclass Claims is $1,200,000, each Class Member making a valid Large Component Subclass Claim will receive 83.33% (i.e., $1,000,000 divided by $1,200,000) of 40% of the total amount of depreciation held back by Hartford as of the date of the file review. By way of example, in this circumstance, if the total amount of depreciation held back by Hartford on the structural portion of the claim as of the date of the file review on an individual Large Component Subclass Claim were determined to be $10,000, the Individual Payment on that claim would be $3,333.33 (calculated as $10,000 multiplied by 40%, multiplied by 83.33%).

(c) Class Members who are not members of the Component Subclass (which means that the only amount that is being claimed as having been improperly depreciated in this lawsuit was the amount of sales tax) shall receive 6% of the total amount of depreciation held back by Hartford on the structural portion of the claim as of the date of the file review. For example, if a claim falls within this category and the amount of depreciation held back on the structural portion of the claim was $10,000, the Individual Payment would be $600 (i.e., 6% of $10,000).

(d) Any Individual Payments hereunder shall be limited by the applicable limits of insurance for each Class Member's claim, after taking into account prior payments on the insurance claim. Hartford shall not be required to make any Individual Payment under this Agreement that would require it to pay a total aggregate amount in excess of the applicable limit of insurance for that Class Member's claim.

7.    <u>Determination and Notice of Individual Payment Amounts.</u> Within 60 days after the deadline for submission of Claim Forms, Hartford shall make a determination regarding whether the Claim Form was submitted by a Settlement Class Member as defined by this Agreement (except for determination of exclusions from the Class requiring an individual file review), and whether the Settlement Class Member's total structural indemnity payment was equal to or less than $20,000, or exceeded $20,000. For those claims on which the Settlement Class Member's total structural indemnity payment was equal to or less than $20,000, within 75 days after the deadline for submission of Claim Forms, Hartford will make a determination of the Individual Payment Amount, if any, that each Settlement Class Member who submits a Claim Form is entitled to under this Agreement. For those claims on which the Settlement Class Member's total structural indemnity payment exceeded $20,000, requiring individual file reviews, within 150 days after the deadline for submission of Claim Forms, Hartford shall make a determination regarding the Individual Payment Amount, if any, that each Settlement Class Member within this category who submits a Claim Form is entitled to under this Agreement. Within 30 days after Hartford completes its determinations regarding all Individual Payment Amounts (separately for each of the two categories of claims described above), the Settlement Administrator shall mail a letter to each Settlement Class Member who submitted a Claim Form advising him/her/it of Hartford's determination, which may be accompanied by a check for the Individual Payment amount (although Hartford is not required to fund any Individual Payments prior to the Effective Date, in the event of an appeal of the Order and Final Judgment). If the Settlement Class Member cashes the check, he or she will waive any right to dispute the Individual Payment under Paragraph II.8 below. The letter will inform the Settlement Class Member of this provision.

8.    <u>Disputes Regarding Individual Payments.</u>  Any Class Member who disagrees with the determination of the amount of his or her Individual Payment may give notice in writing of such a disagreement by mail to the Settlement Administrator, with explanation of the reasons for disagreement. Class Members may also separately object to the approval of the settlement by submitting an objection as set forth in Paragraph II.5.g. above.  A notice of disagreement with a determination of the Individual Payment must be postmarked no later than 30 days from the date the Settlement Administrator mailed the letter regarding Hartford's individual determination (in accordance with Paragraph II.7. above).   The notice of disagreement must contain all facts, reasons and documents supporting the Class Member's contention that his or her Individual Payment is incorrect.  The Settlement Administrator will provide, within seven days of receipt of

a notice of disagreement, a copy of any such notice received from a Class Member to Hartford Counsel and Settlement Class Counsel.  After receiving such notice from the Settlement Administrator, Hartford Counsel and Settlement Class Counsel shall negotiate in good faith to attempt to resolve the dispute within 14 days of receiving notice from the Settlement Administrator.  Hartford, Settlement Class Counsel and Hartford Counsel shall have no liability for the manner in which the Individual Payments are determined under this Agreement, beyond Hartford's liability for the payment of the Individual Payments in accordance with the dispute resolution mechanisms provided for in this Paragraph II.8.

      a.     If Hartford and Settlement Class Counsel agree that the Class Member's Individual Payment was calculated incorrectly, the Settlement Class Member's Individual Payment shall be modified accordingly.  The Settlement Administrator shall notify the Settlement Class Member of the revised determination.  If the Settlement Class Member wishes to renew the objection, the Settlement Class Member shall send a letter renewing the objection to the Settlement Administrator, postmarked within 10 days of the letter advising the Settlement Class Member of the revised determination. If the objection is renewed, the Neutral Evaluator will decide the objection in accordance with Paragraph II.8.d. below. If the objection is not timely renewed within the 10-day period, the Class Member will have no further right other than to the amount of the Individual Payment, if any, as determined without submission to the Neutral Evaluator.

      b.     If Hartford and Settlement Class Counsel agree that the Class Member's Individual Payment was calculated correctly, the Settlement Administrator shall notify the Class Member of this determination.  If the Class Member is not satisfied with the resolution of the dispute, the Class Member's sole remedy shall be to submit the dispute to the Neutral Evaluator for resolution. If the Settlement Class Member wishes to renew the objection, the Settlement Class Member shall send a letter renewing the objection to the Settlement Administrator, postmarked within 10 days of the letter advising the Settlement Class Member of the determination by Hartford Counsel and Settlement Class Counsel. If the objection is renewed, the Neutral Evaluator will decide the objection in accordance with Paragraph II.8.d. below. If the objection is not timely renewed within the 10-day period, the Class Member will have no further right other than to the amount of the Individual Payment, if any, as determined without submission to the Neutral Evaluator.

      c.     If Hartford Counsel and Settlement Class Counsel disagree with respect to the Class Member's Individual Payment determination, the dispute shall be submitted to the Neutral Evaluator in accordance with Paragraph II.8.d. below.

      d.     With respect to any disputes that are submitted to the Neutral Evaluator for determination under the preceding subsections of this Paragraph II.8., the Neutral Evaluator shall decide the amount of the Individual Payment under this Agreement based solely upon the notice submitted by the Settlement Class Member challenging the Individual Payment (and any documents submitted therewith), any supplementary communication provided by the Settlement Class Member in response to any revised or amended determination, and any written submissions of Hartford Counsel and Settlement Class Counsel.  Any written submissions of Hartford Counsel and Settlement Class Counsel shall be provided to the Neutral Evaluator within 21 days of the Settlement Class Member's renewal of the objection or the failure of Hartford

Counsel and Settlement Class Counsel to reach agreement within the 14-day period for their negotiations. Within 30 days of receiving these submissions, the Neutral Evaluator shall report his or her decision in a writing, stating the Neutral Evaluator's final decision regarding the Individual Payment to which the Class Member is entitled under this Agreement, if any. The Neutral Evaluator shall not have the authority to award any amount other than the Individual Payment due under this Agreement, and may not award attorneys' fees or costs. The Neutral Evaluator shall send the written decision to Hartford Counsel, Settlement Class Counsel, and the Settlement Administrator. The Settlement Administrator shall inform the Settlement Class Member of the Neutral Evaluator's decision. The Neutral Evaluator's determination shall be final and binding without any further right of appeal or objection. The Parties and their counsel shall not be liable for any act, or failure to act, of any Neutral Evaluator acting pursuant to this Agreement.

        e.        Hartford shall pay the Neutral Evaluator a fee of $300 per dispute requiring resolution by the Neutral Evaluator.

        f.        In lieu of participating in the Neutral Evaluator process, Hartford shall have the option of paying the lesser of (a) the amount the Settlement Class Member claims should have been his, her or its Individual Payment, or (b) the total amount of structural depreciation held back on the claim as of the date of the file review to fully resolve the dispute, and there shall be no evaluation by the Neutral Evaluator. In order for Hartford to exercise this option under condition (b), Settlement Class Counsel must agree with Hartford on the total amount of structural depreciation held back on the claim.

        9.      <u>Motion for Final Approval</u>.  In accordance with a schedule to be established by the Court, Settlement Class Counsel shall file a Motion for Final Approval in a form to be prepared and agreed upon by Settlement Class Counsel and Hartford Counsel, seeking entry of an Order and Final Judgment pursuant to Federal Rule of Civil Procedure 23(e).

        10.    <u>Entry of Final Judgment</u>.  If, after the final approval hearing scheduled by the Settlement Court in the Preliminary Approval Order, the Settlement Court approves this Agreement, then counsel for the Parties shall request that the Settlement Court enter an Order and Final Judgment pursuant to Federal Rule of Civil Procedure 23(e), and that the Court retain jurisdiction to enforce the terms of the Order and Final Judgment.

        11.    <u>Effective Date of Settlement</u>.  The settlement detailed in this Agreement shall be effective on the first date after all of the following events have occurred:  (1) entry of the Preliminary Approval Order substantially in the form submitted by the parties, or entry of a preliminary approval order not substantially in the form submitted by the parties, with respect to which neither Hartford nor Settlement Class Counsel invoke their termination rights within the period prescribed in Section IV; (2) final approval by the Settlement Court of this Agreement, following notice to the Class and a final approval hearing, as prescribed by Fed. R. Civ. P. 23(e); (3) entry by the Settlement Court of an Order and Final Judgment, in a form not materially inconsistent with this Agreement; and (4) if any Settlement Class Member files an objection to the Settlement, the expiration of any time for appeal or review (including by writ of certiorari or otherwise) of such Order and Final Judgment, or, if any appeal is filed, after such Order and

Final Judgment is upheld on appeal in all material respects and is no longer subject to review on appeal or review by writ of certiorari.

       12.    <u>Settlement Consideration</u>.  Subject to the provisions hereof, and in full, complete and final settlement of all Released Claims as provided herein, within 14 days following Hartford's determination of the Individual Payment Amounts as provided in Paragraph II.7, Hartford shall provide funds to the Settlement Administrator sufficient to pay the Individual Payments, which funds shall be held by the Settlement Administrator in a Qualified Settlement Fund. Within 14 days thereafter, if the Effective Date has occurred, the Settlement Administrator shall pay the Individual Payments to all Settlement Class Members in accordance with Paragraph II.7 above. If the Effective Date has not occurred when Hartford completes its determination of the Individual Payment amounts, the Settlement Administrator shall pay the Individual Payments to all Settlement Class Members within 14 days after the Effective Date occurs. Such payments shall be made by check or draft made payable to the Settlement Class Member and mailed by the Settlement Administrator to his or her last known mailing address or any updated address provided by the Settlement Class Member to the Settlement Administrator.  In the event that the amount of an Individual Payment changes as a result of resolution of a dispute under Paragraph II.8, within 14 days of the final resolution of that dispute, Hartford shall pay, directly to the Settlement Class Member, any additional amount determined to be owed. Payment of the Individual Payments shall completely fulfill Hartford's monetary obligations under this Agreement to the Settlement Class and Hartford shall have no further monetary liability or responsibility to the Settlement Class. In the event that a check or draft issued to a Settlement Class Member is not negotiated within 180 days of the check or draft being mailed, the funds will be handled in accordance with the California Unclaimed Property Law, and Hartford shall have no further monetary liability or responsibility to that individual Settlement Class Member. All other terms of this Agreement, including the Releases set forth in Section III below, shall remain in effect. Any rights to Individual Payments under this Agreement shall inure solely to the benefit of Settlement Class Members and their estates or heirs, and are not otherwise transferable or assignable to others.

       13.    <u>Attorneys' Fees and Expenses</u>.  Hartford agrees to pay Settlement Class Counsel, separately from the amounts paid to the Settlement Class Members, attorneys' fees and costs as awarded by the Court provided that those amounts do not exceed $900,000 in attorneys' fees and $90,000 in costs. The Parties agree that an award of attorneys' fees in this action is a matter committed to the sole discretion of the Settlement Court within the limitations set forth in this paragraph. Settlement Class Counsel shall file any motion for attorneys' fees and expenses no later than 14 days before the deadline for objections to the Settlement, and a copy of the motion shall be placed on the Settlement Administrator's website. The Settlement Court shall determine the appropriate amount of any attorneys' fees and expenses to be paid to Settlement Class Counsel, except that Settlement Class Counsel has agreed not to submit an application to the Settlement Court for attorneys' fees exceeding $900,000, and has agreed not to submit an application for expenses exceeding $90,000.  Settlement Class Counsel has further agreed not to accept any award of attorneys' fees in excess of $900,000, and has further agreed not to accept any award of expenses exceeding $90,000. Hartford agrees not to oppose an application for attorneys' fees if the amount sought does not exceed $900,000.  Hartford further agrees not to oppose an application for expenses if the amount sought does not exceed $90,000.  If the Settlement Court chooses, in its sole discretion, to award attorneys' fees or expenses lower than

the maximum amounts that may be sought under this paragraph, this Agreement shall remain fully enforceable, and Hartford shall be obligated to pay only the amounts awarded by the Settlement Court. Upon payment of the attorneys' fees and expenses as awarded by the Settlement Court in its discretion, Settlement Class Counsel shall release and forever discharge any claims, demands, actions, suits, causes of action, or other liabilities relating to any attorneys' fees or expenses incurred in the Civil Action as to Hartford.  Any attorneys' fees and expenses awarded by the Settlement Court in accordance with this paragraph shall be paid by check within 14 days after the Effective Date.

14.    Enhancement Award to the Settlement Class Representative.  The Settlement Class Representative may submit a Claim Form and receive an Individual Payment in accordance with Paragraph II.6 above.  Hartford also agrees to pay the Settlement Class Representative, separately from the amounts paid to the Settlement Class Members, an enhancement award in recognition of his effort and service in bringing the Civil Action on behalf of the Class (the "Enhancement Award"), if such an award is approved by the Court.  Any motion of the Settlement Class Representative for an Enhancement Award must be filed with the Court no later than 14 days before the deadline for objections to the Settlement, and posted on the Settlement Administrator's website. The Settlement Court shall determine the amount of an Enhancement Award, if any, in the Settlement Court's discretion, except that the amount requested in such application shall not exceed $10,000, and the Settlement Class Representative shall not accept an award in excess of $10,000.  Hartford agrees not to oppose such an application for an Enhancement Award that does not exceed $10,000.  The Court may, in its discretion, award less than the amount requested. If the Settlement Court chooses, in its sole discretion, to make an Enhancement Award less than the maximum amount that may be requested under this paragraph, or if the Settlement Court chooses, in its sole discretion, not to make an Enhancement Award, this Agreement shall remain fully enforceable, and Hartford shall be obligated to pay only the amount, if any, awarded by the Settlement Court.   Hartford shall pay any Enhancement Award made by the Settlement Court in accordance with this paragraph by check within 14 days after the Effective Date of Settlement. The Settlement Class Representative agrees that any federal, state, municipal, or other taxes, contributions, or withholdings that may be owed or payable by him, or any tax liens that may be imposed, on the sums paid to him pursuant to this paragraph are his sole and exclusive responsibility, and the Settlement Class Representative agrees to indemnify Hartford should any liability, claim, or lien be imposed on Hartford for his failure to pay taxes resulting on the sums paid to him under this Agreement.

15.    All Claims Satisfied.  Each Settlement Class Member shall look solely to the relief described in Paragraphs II.6 through II.8 for settlement and satisfaction, as provided herein, of all Released Claims.

16.    Consent to Class Certification for Settlement Purposes Only.  The Parties acknowledge and agree and hereby stipulate that: (i) Hartford reserves the right to move for decertification of the Class and/or Component Subclass, and to appeal any of the Court's rulings with respect to class certification and/or decertification, in the event this Agreement is terminated for any reason; and (ii) this Agreement shall have no precedential effect with regard to any other lawsuit against Hartford that may be pending now or in the future, other than in a proceeding seeking to enforce this Agreement.

## III.     RELEASES AND JURISDICTION OF COURT

1.      <u>Release of Released Entities</u>.  Upon the Effective Date of this Agreement, the Released Entities shall be released and forever discharged from any Released Claims that any Releasor has or may have had. All Releasors covenant and agree that they shall not hereafter seek to establish liability against any Released Entity based, in whole or in part, on any of the Released Claims. Upon the Effective Date, all Releasors will be forever barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any action against any Released Entity with respect to the Released Claims.

2.      <u>Waivers of Provisions of Law Limiting the Release of Unknown or Unsuspected Claims</u>.  The Settlement Class Representative and all Settlement Class Members hereby expressly, knowingly, and voluntarily waive the provisions of any state, federal, municipal, local, or territorial law or statute providing in substance that releases shall not extend to claims, demands, injuries, and/or damages that are unknown or unsuspected to exist at the time a settlement agreement is executed and/or approved by a court.  The Settlement Class Representative and all Settlement Class Members expressly acknowledge and assume all risk, chance, or hazard that the damage allegedly suffered may be different, or may become progressive, greater, or more extensive than is now known, anticipated, or expected. Furthermore, the Settlement Class Representative and all Settlement Class Members specifically release any right they may now or hereafter have to reform, rescind, modify, or set aside this Release or this Agreement through mutual or unilateral mistake or otherwise; and they assume the risk of such uncertainty and mistake with respect to the consideration herein mentioned and with respect to this being a final settlement.

3.      <u>California Civil Code Section 1542 Waiver</u>.  Without limiting Paragraph III.2 above, as to the Released Claims, all Releasors waive all rights and benefits afforded by section 1542 of the Civil Code of the State of California, and do so understanding the significance of that waiver. Section 1542 provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Notwithstanding the provisions of section 1542, or any other law designed to prevent the waiver of unknown claims, and for the purpose of implementing a full and complete release and discharge of all Released Claims against all Released Entities, Releasors expressly acknowledge that this Agreement is intended to include in its effect, without limitation, all of the Released Claims that Releasors do not know or suspect to exist in their favor against the Released Entities, or any of them, at the time of execution hereof, and that this Agreement extinguishes any such claims.

4.      Consent to Jurisdiction.  The Parties hereby irrevocably submit to the exclusive jurisdiction of the Settlement Court for purposes of any suit, action, proceeding or dispute arising out of, or relating to, this Agreement or the applicability of this Agreement.

5.      Resolution of Disputes; Retention of Jurisdiction.  Any disputes between or among the Parties concerning matters contained in this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Settlement Court for resolution. The Settlement Court shall retain jurisdiction over the implementation and enforcement of this Agreement.

## IV.      TERMINATION OF THE AGREEMENT

1.      Rejection or Material Alteration of Settlement Terms.  Hartford and the Settlement Class Counsel (with the consent of the Settlement Class Representative) shall each have the right to terminate this Agreement by providing written notice of their election to do so to each other within 14 days of (1) the Settlement Court declining to enter the Preliminary Approval Order without material alteration from the form submitted jointly by the parties, or declining to approve the Settlement Notice without material alteration from the form submitted jointly by the parties; (2) the Settlement Court declining to enter the Order and Final Judgment in a form not materially inconsistent with this Agreement; (3) the date upon which the Order and Final Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Ninth Circuit or the Supreme Court of the United States (except with respect to the amount of the attorneys' fees and costs or Enhancement Award); (4) the mutual agreement of the Settlement Class Representative, Settlement Class Counsel, and Hartford to terminate the Agreement; (5) the date upon which  seven hundred and fifty (750) or more Class Members have declined to participate in the settlement by opting out of the Settlement Class in accordance with Paragraph II.5.f. above; or (6) any financial obligation is imposed upon Hartford in addition to and/or greater than those specifically accepted by Hartford in this Agreement. If an option to terminate this Agreement arises under this paragraph, no Party is required for any reason or under any circumstance to exercise that option.

2.      Return to Pre-Agreement Status.  In the event any of the Parties exercise the right of termination enumerated in Paragraph IV.1, this Agreement shall be null and void, the Parties shall jointly request that any orders entered by the Court in accordance with this Agreement be vacated, and the rights and obligations of the Parties shall be identical to those prior to the execution of this Agreement.  In the event either Party exercises any right of termination, the Parties agree to jointly request that the Court provide a reasonable opportunity to conduct non-repetitive discovery, file motions and engage in such other further proceedings as were contemplated before the Parties entered into this Agreement.

3.      No Admission of Liability / Compromise of Disputed Claims.  The Parties hereto agree that this Agreement, whether or not the Effective Date occurs, and any and all negotiations, documents and discussions associated with this Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by Hartford or of the truth of any of the claims or allegations contained in Complaint; and evidence thereof shall not be discoverable or used directly or indirectly by the Class or any third party, in any way for any purpose, except that the provisions of this Agreement may be used by

the Parties to enforce its terms, whether in the Civil Action or in any other action or proceeding. This Agreement, all discussions leading thereto, and all of the terms herein constitute compromises and offers to compromise under Fed. R. Evid. 408.  In the event that this Agreement is terminated pursuant to Paragraph IV.1, nothing in this Agreement or its negotiation may be used as evidence in any action. The Parties expressly waive the potential applicability of any doctrine, case law, statute, or regulation, which, in the absence of this paragraph of this Agreement, could or would otherwise permit the admissibility into evidence of the matters referred to in this paragraph, including but not limited to, *White v. Western Title Insurance Company*, 40 Cal. 3d 870 (1985). The Parties expressly reserve all their rights and defenses if this Agreement does not become final and effective substantially in accordance with the terms of this Agreement. The Parties also agree that this Agreement, any orders, pleadings or other documents entered in furtherance of this Agreement, and any acts in the performance of this Agreement are not intended to be, nor shall they in fact be, admissible, discoverable or relevant in any other case or other proceeding against Hartford to establish grounds for certification of any class, to prove either the acceptance by any Party hereto of any particular theory of coverage or other legal theory, or as evidence of any obligation that any Party hereto has or may have to anyone. This provision shall survive any termination of this Agreement.

## V.   REPRESENTATIONS AND WARRANTIES

1.   Authorization to Enter This Agreement.  The undersigned representative of Hartford represents and warrants that he or she is fully authorized to enter into and to execute this Agreement on behalf of Hartford.  Settlement Class Counsel represent and warrant that they are fully authorized to conduct settlement negotiations with Hartford Counsel on behalf of the Settlement Class Representative and to enter into, and to execute, this Agreement on behalf of the Settlement Class Representative and the Settlement Class, subject to Settlement Court approval pursuant to Fed. R. Civ. P. 23(e).

2.   Assignment.  The Settlement Class Representative represents and warrants that he has not assigned or transferred any interest in the Civil Action which is the subject of this Agreement, in whole or in part.

3.   Representation.  The Settlement Class Representative acknowledges that he has been represented by counsel of his own choosing in the Civil Action and the negotiation and execution of this Agreement, that he participated in the settlement negotiations and the decision to enter into this Agreement, that he fully understands this Agreement, and that he has had a reasonable and sufficient opportunity to consult with counsel before executing this Agreement.

## VI.   ADDITIONAL PROVISIONS

1.   Use of This Agreement.  The provisions of this Agreement, and any orders, pleadings or other documents entered in furtherance of this Agreement, may be offered or received in evidence solely (i) to enforce the terms and provisions hereof or thereof, (ii) as may be specifically authorized by a court of competent jurisdiction after hearing upon application of a Party hereto, (iii) in order to establish payment or a defense in a subsequent case, including res judicata, or (iv) to obtain Court approval of this Agreement.

17

2.      Binding Effect.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

3.      No Party is the Drafter.  This Agreement has been negotiated at arm's length, with the participation of the Parties and their counsel. In the event of a dispute arising out of this Agreement, none of the Parties shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that would or might cause any provision to be construed against the drafter hereof.

4.      Headings.  The headings to this Agreement have been inserted for convenience only and are not to be considered when construing the provisions of this Agreement.

5.      Construction.  This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Agreement, for a complete resolution of the Released Claims with respect to the Released Entities.

6.      Choice of Law.  All terms of this Agreement shall be governed by and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

7.      Amendment or Waiver.  This Agreement shall not be modified in any respect except by a writing executed by all the Parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach of this Agreement, whether prior, subsequent or contemporaneous.

8.      Modification.  Prior to entry of the Order and Final Judgment, this Agreement may, with approval of the Court, be modified by written agreement of the Parties without giving any additional notice to the Settlement Class, provided that such modifications are not materially adverse to the Settlement Class.

To the extent that Settlement Class Members desire to be notified regarding any additional changes as described in this paragraph, or otherwise after the initial notice of the settlement, the preliminary approval hearing and the final approval hearing, they must mail to the Settlement Administrator a request for notice, or send such a request in writing to Settlement Class Counsel, who shall maintain a list of all such requests that are received. Settlement Class Members who provide an e-mail address agree to electronic notification. The provisions of this section advising Settlement Class Members of this requirement shall be included in the Settlement Notice.

9.      Execution in Counterparts.  This Agreement may be executed in counterparts. Facsimile signatures or signatures in PDF format shall be considered as valid signatures as of the date thereof, and may be filed with the Settlement Court.

10.     Integrated Agreement.  This Agreement, including the exhibits hereto, contains an entire, complete, and integrated statement of each and every term and provision agreed to by and between the Parties hereto, and supersedes any prior oral or written agreements and

contemporaneous oral agreements among the Parties. The exhibits to this Agreement are integral parts of the settlement and are hereby incorporated and made parts of this Agreement.

       11.    <u>Notices</u>.  All notices and other communications required or permitted under this Agreement, other than requests for exclusion or objections to the proposed settlement, shall be in writing and delivered in person, by overnight delivery service or by facsimile. Any such notice shall be deemed given as of the date of receipt and shall be delivered to the Parties as follows:

If to the Settlement Class Representative, Settlement Class Counsel and/or the Settlement Class:

Michael von Loewenfeldt, Esq.
Ivo Labar, Esq.
Daniel J. Veroff, Esq.
Kerr & Wagstaffe LLP
101 Mission Street, 18th Floor
San Francisco, CA 94105-1727

If to Hartford or Hartford Counsel:

Michael D. Mulvaney, Esq.
Christopher C. Frost, Esq.
Linda B. Oliver, Esq.
Maynard, Cooper and Gale, LLP
600 Montgomery Street, Suite 2600
San Francisco, CA 94111

       12.    <u>Severability</u>.  In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision if the Parties mutually elect to proceed as if such invalid, illegal or unenforceable provision had never been included in the Agreement.

       13.    <u>Confidential Information</u>.  Settlement Class Counsel and the Settlement Administrator shall keep confidential any personal identifying information of Hartford insureds, and any financial information of Hartford insureds or of Hartford, that has or may come into their possession. Any documents containing such confidential information provided to Settlement Class Counsel will be destroyed, with an affidavit of destruction provided, within 60 days after the date on which all Individual Payments have been made, or this Agreement has been terminated in accordance with Section IV.

       14.    <u>Deadlines</u>. In the event any date or deadline set forth in this Agreement falls on a weekend or federal or state legal holiday, such date or deadline shall be on the first business day thereafter.

       15.    <u>Retention of Records</u>.  Hartford, the Settlement Administrator and Settlement Class Counsel shall retain copies or images of all returned mailed notices, correspondence related thereto and settlement checks in their possession for a period of two (2) years after the Effective Date. After this time, the Settlement Administrator and Settlement Class Counsel shall

destroy any such documentary records they have in their possession, and Hartford will have the option, in its sole discretion, to destroy such records.

16.     Contact With Class Members. Hartford may communicate with the Class Members in the ordinary course of its business, and continue to adjust insurance claims that fall within the scope of the Class. Hartford will refer inquiries regarding this Agreement and the administration of the settlement to the Settlement Administrator.

17.     Public Statements. The Parties will not make any public statements or statements to the media, or on the Internet or via social media regarding this Agreement other than to refer inquiries to the public filings made with the Court and/or the Settlement Administrator's website.

Dated this _15_ day of February, 2018

SIGNED AND AGREED:

For the Settlement Class Representative, the Settlement Class and Settlement Class Counsel:

G. Grant Johnson

Michael von Loewenfeldt, Esq.
Ivo Labar, Esq.
Daniel J. Veroff, Esq.
Kerr & Wagstaffe LLP
101 Mission Street, 18th Floor
San Francisco, CA 94105-1727


For Hartford:


_____

Print Name: _____

Title: _____

20

destroy any such documentary records they have in their possession, and Hartford will have the option, in its sole discretion, to destroy such records.

16.     Contact With Class Members. Hartford may communicate with the Class Members in the ordinary course of its business, and continue to adjust insurance claims that fall within the scope of the Class. Hartford will refer inquiries regarding this Agreement and the administration of the settlement to the Settlement Administrator.

17.     Public Statements. The Parties will not make any public statements or statements to the media, or on the Internet or via social media regarding this Agreement other than to refer inquiries to the public filings made with the Court and/or the Settlement Administrator's website.

Dated this 15th day of February, 2018

SIGNED AND AGREED:

For the Settlement Class Representative, the Settlement Class and Settlement Class Counsel:


_____

G. Grant Johnson


_____

Michael von Loewenfeldt, Esq.
Ivo Labar, Esq.
Daniel J. Veroff, Esq.
Kerr & Wagstaffe LLP
101 Mission Street, 18th Floor
San Francisco, CA 94105-1727


For Hartford:

_____

Print Name: _Megan Janeiro_

Title: _AVP, Claim_

20