MICHAEL VON LOEWENFELDT (178665)
IVO LABAR (203492)
DANIEL J. VEROFF (291492)
**KERR & WAGSTAFFE LLP**
101 Mission Street, 18th Floor
San Francisco, CA 94105–1727
Telephone: (415) 371-8500
Fax: (415) 371-0500
Email: mvl@kerrwagstaffe.com
Email: labar@kerrwagstaffe.com
Email: veroff@kerrwagstaffe.com

Attorneys for Plaintiff
G. GRANT JOHNSON and the Settlement Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| G. GRANT JOHNSON, an individual, on behalf of himself and a class of similarly situated persons,<br><br>    Plaintiff,<br><br>  v.<br><br><br>HARTFORD CASUALTY INSURANCE COMPANY, et al.,<br><br>    Defendants. | Case No. 3:15-cv-04138-WHO<br><br>**DECLARATION OF MICHAEL VON LOEWENFELDT IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>———————————————<br><br>DATE: September 19, 2018<br>TIME:  2:00 PM<br>DEPT:  Courtroom 2, 17th Floor |

## DECLARATION OF MICHAEL VON LOEWENFEDLT

I, Michael von Loewenfeldt, hereby declare as follows:

1.      I am an attorney licensed to practice before all federal and state courts in California.  I am a partner in the law firm of Kerr & Wagstaffe LLP, attorneys of record for Plaintiff G. Grant Johnson and the Settlement Class.  I submit this declaration in support of Plaintiff's Motion for Class Certification.  I am personally familiar with the facts set forth in this declaration.  If called as a witness, I could and would competently testify to the matters stated herein.

2.      I am the lawyer at my firm with principal responsibility for this matter.  My firm originated this case and has worked on this matter continuously since.  My firm and I have devoted considerable time and resources to this matter and have been centrally involved in every aspect of the proceedings before this Court.

3.      Kerr & Wagstaffe LLP has extensive experience with insurance law, unfair competition, and class action litigation.

4.      I graduated Phi Beta Kappa from San Diego State University in 1991 with a B.A. in Political Science. I received my J.D. from the University of California at Berkeley (Boalt Hall) in 1995 and was made a member of the Order of the Coif. After law school, I served as a law clerk to the Honorable Saundra B. Armstrong of this Court. I am also certified by the State Bar of California Board of Legal Specialization as a specialist in Appellate law.

5.      I have substantial experience in consumer, employment, and class action litigation. I have represented both plaintiffs and defendants in class actions in California and other jurisdictions in the United States, including two similar to this action (*Alexander* and *Kirkwood* below). In addition to his action, I have represented certified plaintiffs' classes in:

   a.   *Alexander v. Farmers Insurance Company, Inc.*, Superior Court of California, County of Los Angeles, BC460992, a consumer rights class action involving depreciation taken on personal property items under homeowners insurance policies, which settled on terms that were approved by the Los Angeles County Superior Court;

1    b. *Kirkwood v. California State Automobile Association Inter-Insurance Bureau*,

2      Superior Court of California, County of San Francisco CGC-09-48919, a

3      consumer rights class action involving depreciation taken on personal

4      property items under homeowners insurance policies, which settled on terms

5      that were approved by the San Francisco County Superior Court;

6    c. *Opperman v. Path, et. al.*, United States District Court, Northern District of

7      California, a consumer rights class action involving the invasion of privacy on

8      mobile devices in which I was co-lead counsel, which settled on terms that

9      were approved by the Northern District;

10    d. *Benson et al. v. Bella Enterprises, Ltd. et al*, Superior Court of California,

11      County of Santa Clara, 110CV165035, a wage and hour class action which

12      settled on terms that were approved by the Santa Clara Superior Court;

13    e. *Bhatnagar et al. v. Catalina Restaurant Group, Inc.*, Superior Court of

14      California, County of Alameda, RG 05246009, a wage and hour class action

15      which settled on terms that were approved by the Alameda County Superior

16      Court;

17    f. *De La Cruz et al. v. California Pizza Kitchen, Inc.*, Superior Court of

18      California, County of San Francisco, CGC-07-462843, a wage and hour class

19      action which settled on terms that were approved by the San Francisco County

20      Superior Court;

21    g. *Diapo v. Flight Centre USA, Inc.*, United States District Court for the Central

22      District of California case number CV 09-4790 PSG, a wage and hour class

23      action which settled on terms that were approved by the United States District

24      Court;

25    h. *Finley v. Wells Fargo Financial Acceptance California, Inc.*, Superior Court

26      of California, County of Los Angeles (Central District), BC 331174, a wage

27      and hour class action which settled on terms that were approved by the Los

28      Angeles County Superior Court;

i. *Forestiere v. West Coast Life Ins. Co.*, Superior Court of California, County of San Francisco CGC 01-402340, a consumer rights class action involving the purchase of life insurance policies, which settled on terms that were approved by the San Francisco County Superior Court;

j. *In re Prudential Insurance Company of America SGLI/VGLI Contract Litigation*, United States District Court for the District of Massachusetts master case number 3:11-md-2208-MAP, four consolidated MDL matters involving military life insurance where I was co-lead counsel and MDL liaison counsel. The matter settled on terms that were approved by the United States District Court;

k. *Knight v. Red Door Salons*, United States District Court for the Northern District of California case number C-08-1520 SC, a wage and hour class action which settled on terms that were approved by this Court;

l. *McCardle v. 24 Hour Fitness*, Superior Court of California, County of Alameda, RG08414888, a consumer rights class action involving access to various levels of gyms at 24 Hour Fitness, which settled on terms that were approved by the Alameda County Superior Court;

m. *Mulholland v. Cozza*, Superior Court of California, County of San Francisco, CGC 07-468443, a wage and hour class action which settled on terms that were approved by the San Francisco County Superior Court;

n. *Radford v. HFS North America LLC*, Superior Court of California, County of Alameda, RG 06296440, a wage and hour class action which settled on terms that were approved by the Alameda County Superior Court;

o. *Scher et al. v. California Physicians' Service*, Superior Court of California, County of San Francisco, CGC 08-481431, a consumer rights/health insurance class action which settled on terms that were approved by the San Francisco County Superior Court;

p. *Topper and Molina v. RedWing Shoe Company, Inc.*, Superior Court of

California, County of Alameda, RG 06256269, a wage and hour class action which settled on terms that were approved by the Alameda County Superior Court;

q. *Venegas et al. v. Apria Health Care, Inc.*, Superior Court of California, County of San Francisco, CGC 06-449669, a wage and hour class action which settled on terms that were approved by the San Francisco County Superior Court;

r. *Weir v. 24 Hour Fitness*, Superior Court of California, County of San Francisco, CGC-05-438478, a consumer rights class action involving 1.8 million Class Members which settled on terms that were approved by the San Francisco County Superior Court;

s. *Williams v. LA Fitness*, Superior Court of California, County of Los Angeles, BC385623, a consumer rights class action which settled on terms that were approved by the Los Angeles County Superior Court.

6. The Settlement Class Representative filed the Complaint in this action in the Superior Court for the State of California, City and County of San Francisco on August 13, 2015. Hartford removed the case to this Court on September 11, 2015. ECF No. 1. Hartford answered the Complaint on December 2, 2015. ECF No. 26.

7. The parties then conducted discovery for approximately one year. Hartford produced approximately 11,000 pages of documents and responded to 46 requests for admission and 43 interrogatories. Plaintiff produced almost 10,000 pages of documents and responded to extensive written discovery as well. Additionally, the parties took depositions of the Plaintiff, the public adjuster who adjusted Plaintiff's claim, employees of Hartford (including the director of the applicable claims unit), and the parties' respective class certification experts.

8. On January 20, 2017, Hartford filed a motion for summary judgment and the Plaintiff filed a motion to certify a class. ECF Nos. 36, 37. On May 22, 2017, the Court denied Hartford's motion for summary judgment and granted the motion for class certification. ECF

1    No. 64.[1]

2          9.    Hartford filed a petition for interlocutory review of the class certification on June

3    6, 2017.  Plaintiff filed an opposition.  The Court of Appeal exercised its discretion to deny the

4    petition on August 14, 2017.

5          10.    On or about February 15, 2018, Plaintiff, on behalf of himself and all Settlement

6    Class Members (as defined), entered into a Class Action Settlement Agreement (the "Settlement

7    Agreement"), previously filed (ECF 85-4).  The proposed Settlement is the result of lengthy,

8    arms' length negotiations between the parties, with the assistance of experienced neutral

9    mediators.  Both parties were represented by experienced counsel throughout the negotiations.

10   The parties conducted three mediations prior to reaching the proposed Settlement, each before

11   neutral mediators with extensive experience mediating complex class action litigation.  The

12   proposed Settlement was reached after the third mediation session, conducted before the

13   Honorable John F. Herlihy (Ret.) of JAMS, a retired judge of the Superior Court for the State of

14   California.

15         11.    The Settlement Agreement provides that each member of the Settlement Class

16   (i.e., each member of the Class who does not opt out, *see* Settlement Agreement ¶ I.19, who

17   timely submits a Claim Form (*see id.* ¶ II.5.d) will receive a monetary payment based on the

18   amount of the total structural indemnity payment they received, as described further below (*see*

19   Settlement Agreement ¶ II.6).  As explained below, the settlement divides recovery into a

20   number of tranches for administrative manageability, but Class Members who make claims

21   should receive what we estimate to be approximately 50% of the amount sought.

22         12.    In evaluating the data provided in discovery and in connection with the

23   mediations, we determined that the vast majority of claims were very small (with a total payment

24   of less than $20,000).  These claims had very little depreciation taken in the challenged

25   categories.  This is consistent with my experience in similar litigation, and reflects the fact that

26

27

28   [1]    The order granting class certification was subsequently modified on July 18, 2017 to
     amend the class definition.  ECF No. 73.

for every house that burns to the ground there are hundreds or thousands that have, for example, a small water leak or other type of covered minor damage.   In order to avoid wasting resources on an extensive individual file review being conducted for smaller files, and in order to make compensation available to all Settlement Class Members whose claims were the subject of the allegedly improper practices, the Settlement is structured so that Settlement Class Members with smaller dollar value claims will receive a lump sum based on the overall dollar value of their claim.  This approach also maximized the amount of money Hartford was willing to pay to the Class as opposed to spending on administrative tasks. Settlement Class Members whose total structural indemnity payment was equal to or less than $20,000 will receive a lump sum as follows if they submit a valid claim form:

| Total Structural Indemnity Payment | Lump Sum Settlement Payment |
| --- | --- |
| $0.01 - $1,000 | $30 |
| $1,000.01 - $5,000 | $60 |
| $5,000.01 - $10,000 | $110 |
| $10,000.01 - $20,000 | $220 |

Based on an analysis of data compiled from estimates on potential Class Members' claims, these lump sum amounts are approximately 50% of the average amount claimed on behalf of the Class Members in each subcategory.

13.     For larger claims, we determined in discovery that Hartford did not have readily available sufficient computerized data to evaluate what withheld depreciation was owed on the specific components at issue on this case.  While we believe that an appropriate model could be developed for trial if necessary, the best way to make an accurate assessment for each class member is a file-by-file review. This approach was used and approved by the Los Angeles Superior Court in the *Alexander* class action.  Under the Settlement, for Settlement Class

1  Members whose total structural indemnity payment was more than $20,000, Hartford will

2  conduct an individual file review of these Settlement Class Members' claims files.  These

3  Settlement Class Members will receive payments calculated by the following formulas:

4        a.  Class Members who are members of the Component Subclass whose total

5           structural indemnity payment was between $20,000.01 and $100,000 will

6           receive 20% of the total amount of depreciation held back by Hartford on the

7           structural portion of their claim as of the date of the file review. Based on the

8           analysis of Hartford's data, this is approximately 50% of the amount claimed

9           by Plaintiff on behalf of the Class Members in this category.

10        b.  Class Members who are members of the Component Subclass whose total

11           structural indemnity payment was over $100,000 will receive 40% of the total

12           amount of depreciation held back by Hartford on the structural portion of their

13           claim as of the date of the file review. As with the other categories, based on

14           the analysis of Hartford's data, this is approximately 50% of the amount

15           claimed by Plaintiff on behalf of the Class Members in this category.

16           This category, which contains a small number of large claims, is subject to a

17           payout cap of $1,000,000, with a proportional reduction in amount if claims

18           exceed that level. The Parties agreed to this cap because Hartford has less data

19           available in this category from electronic estimates regarding the depreciation

20           taken on these claims. The lack of data is due to how these large claims are

21           typically handled, with consultants assisting Hartford in the adjustment

22           process.  Based on an extrapolation from the available data, the total potential

23           value of these claims has been estimated at approximately $3,000,000, and

24           thus the cap would be triggered only if more than 33% of the Class Members

25           in this category chose to submit Claim Forms. Class Members with claims

26           over $100,000 also have a greater incentive to negotiate or litigate their

27           disputes individually, and can opt out of the Settlement if they so desire.

28

c. Class Members who are not members of the Component Subclass (which means that the only amount that is being claimed as having been improperly depreciated in this lawsuit was the amount of sales tax) will receive 6% of the total amount of depreciation held back by Hartford as of the date of the file review. Given that the current sales tax rate in California is 7.25% and higher in some localities, this is as much as 83% of the amount being claimed (consistent with Plaintiff's position that he has a strong likelihood of prevailing on the sales tax issue).

14. After preliminary approval, the administrator informed us that Notice was sent to 28,282 potential class members.  Because of the need for file review to confirm membership for some claims, the notice group is necessarily over-inclusive.   Based on information provided by Hartford's counsel, we estimate the potential available class recovery under the settlement to be approximately $5 million as follows (the percentages and figures are rounded approximations based on available information):

a. 15% of the Class had a structural claim between $1 and $1,000 dollars.  This group is eligible for a $30 settlement, the total value of which is approximately $125,000.

b. 37% of the Class had a structural claim between $1,001 and $5,000.  This group is eligible for a $60 settlement, the total value of which is approximately $620,000.

c. 19% of the Class had a structural claim between $5,001 and $10,000.  This group is eligible for a $110 payment, the total value of which is approximately $600,000.

d. 14% of the Class had a structural claim between $10,001 and $20,000.  This group is eligible for a $220 payment, the total value of which is approximately $880,000.

e. 12% of the Class had a structural claim in excess of $20,000 but not more than $100,000.  This group is subject to file review, but if all class members'

1  claims were made and confirmed would receive approximately $1.8 million.

2        f.   2% of the Class had structural claims over $100,000. This group's recovery,

3           subject to file review, is capped at $1 million.

4       15.    The Settlement Agreement contains stipulations about an attorneys' fee motion.

5  The Parties did not discuss attorneys' fees until after an agreement was reached in principle with

6  respect to the Settlement Class benefits, including the amount of monetary relief to the

7  Settlement Class.  The settlement is not contingent on the Court's fee award, although obviously

8  we believe we should be granted the fees we seek. Similarly, we seek an incentive payment for

9  the class representative, but the Settlement is not contingent on that request being granted.

10       16.    We believe that the Class's claims are meritorious and that there is a reasonable

11  probability that the Class would prevail at trial, particularly in light of the Court's ruling

12  certifying a class and denying Hartford's motion for summary judgment.  However, with respect

13  to the Component Subclass, we recognize that there is a substantial possibility that Hartford

14  could prevail at trial with respect to various components at issue. For example, the class claim

15  concerning framing is stronger than the class claim involving cabinets. Hartford also contends

16  that the remaining discovery is likely to adduce facts that would support decertification of the

17  class, and that it is likely to prevail on appeal with respect to class certification and some or all of

18  the issues addressed in the Court's summary judgment ruling.  The outcome of a trial and any

19  subsequent appeals is uncertain, and even if Plaintiff were to prevail, litigating the claims

20  through judgment and appeal would substantially delay any recovery achieved.

21       17.    Thus, given all of the above, and based on a thorough investigation of the factual

22  and legal issues raised in this case as well as my experience generally and in cases very similar to

23  this specifically, I believe that the Settlement is fair, reasonable, and adequate and provides

24  appropriate monetary relief for Settlement Class Members while allowing them to avoid the risks

25  of unfavorable, and in some scenarios possibly dispositive, rulings.  While I believe that the

26  Settlement Class could overcome the various defenses that Hartford intends to assert, there are

27  substantial risks and delays that the Settlement Class would face should the litigation proceed to

28  completion.

KERR
&
WAGSTAFFE
LLP

18.     My firm has invested a substantial amount of time and money prosecuting this action on a contingency basis since 2015 and advancing costs.  We undertook this effort with no guarantee of payment, and at the expense of work where we could have been paid by the hour. When we take cases on contingency, we expect a risk enhancement if we prevail. Otherwise it would be irrational to take contingency work when we could instead do hourly work. The work on this case at this firm was primarily performed by me (MVL), my partner Ivo Labar (IL), and associates Daniel Veroff (DJV), Nathaniel Ku (NK), and four paralegals (at various times Bradley Kopp (BJK), Erin Murphy (EM), Spencer Reckon (SR), and Sarah Guzman (SRG)). Occasional work was done by others at the firm to assist, but I have eliminated that time as a matter of billing partner judgment.

19.     My qualifications are stated above.  My current standard hourly billing rate is $700 per hour. My partner Ivo Labar graduated with honors from the University of California, Hastings College of the Law in 1999 and clerked for the Honorable Charles Legge of this Court. Mr. Labar is an experienced trial lawyer with a substantial insurance coverage and bad faith practice. His current standard hourly billing rate is also $700 per hour.  Daniel Veroff also received his JD from Hastings, in 2013, and has substantial experience working for policyholders in coverage and bad faith matters. His current standard hourly billing rate is $450 per hour. Nathaniel Ku is no longer with our firm, but worked for us in his first year of practice after graduating from Hastings.  His standard hourly billing rate was $295 per hour.  Our standard hourly billing rate for paralegals is $200 per hour. I am familiar with the rates charged by other San Francisco law firms for attorneys and other professionals of similar experience to those who worked on this case, and based on that familiarity state that these rates charged by our firm are below or equal to the locally prevailing rates for comparable firms and attorneys. These rates do not include any risk enhancements.

20.     Based on our current rates, we have incurred $699,111 in fees through July 12, 2018, representing 1,325.8 hours of work.  Attached hereto as Exhibit A are time records reflecting my firm's work on the case on a daily basis, with specific tasks noted.   These records are billed pursuant to our standard practice in six minute (0.1 hour) increments, and reflect time

1  records that were entered contemporaneously as the work was performed.  These time and

2  expense records are kept in the same course of business as the bills we send to hourly clients.  I

3  have reviewed these time entries and have made deletions and reductions consistent with the

4  same "billing partner judgment" that I use for my hourly-paying clients (for instance, numerous

5  short phone calls and email exchanges are not recorded on the bills, and I have removed time that

6  was inefficient and time spent by other attorneys who pitched in for a few hours here and there).

7       21.    All of the time reflected in Exhibit A was necessary, in my professional judgment,

8  to prosecute this case.  Indeed, I believe my firm prosecuted this case very efficiently, in large

9  part due to our experience in similar cases, and that without such experience we would have had

10  to spend considerably more time to achieve the result we achieved here.

11       22.    This time does not reflect time we will need to spend drafting a final approval

12  motion, responding to class member inquiries and concerns, and preparing for and attending the

13  final approval hearing.  More importantly, the settlement agreement includes a post-judgment

14  review of claims and imposes duties on Class Counsel in connection with that review. In

15  addition, in a case like this I typically receive calls from class members for at least a year after

16  approval about the settlement.  I conservatively estimate that I will spend at least 100 hours

17  dealing with this matter after this declaration is filed. None of that time is included in the lodestar

18  of work to date.

19       23.    The fees requested of $900,000 represent a modest lodestar multiplier of 1.287,

20  and 15% of the settlement value (not including administrative costs, expenses, or the class

21  representative incentive award).

22       24.    My firm has also advanced costs in a total amount to date of $71,406, as listed in

23  Exhibit B.  These are all costs that we would charge hourly clients and which we regularly

24  recover from those clients.  We will incur additional costs in filing this motion, the final approval

25  motion, and otherwise dealing with the final approval process and subsequent claims

26  administration.  We have included $594 in our request as an estimate of those future costs.

27       25.    Throughout the litigation, Mr. Johnson was available and responsive and, in my

28  professional opinion, performed his obligations as class representative in an exemplary fashion.

KERR
&
WAGSTAFFE
LLP

His efforts on behalf of the class are further described in his declaration filed on February 23, 2018, ECF No. 85-1.

26.     As directed by the Court, I will instruct the claims administrator to post this motion and all supporting papers on the claims administration website when it is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 12th day of July, 2018 at San Francisco, California.


/s/ Michael von Loewenfeldt
Michael von Loewenfeldt

KERR
&
WAGSTAFFE
LLP